Ronald H. Freshman, Esq. (SBN 225136)
**LAW OFFICES OF RONALD H. FRESHMAN**
3040 Skycrest Drive
Fallbrook, CA  92028
Telephone: (858) 756-8288
Facsimile: (858) 964-1728
Email: rhf@freshmanlaw.com

Attorney for Plaintiffs,
GARY MERLE KOEPPEL and EMMA K. KOEPPEL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GARY MERLE KOEPPEL, individual and as Trustee for the KOEPPEL FAMILY TRUST; <br> EMMA K. KOEPPEL, individual and as Trustee for the KOEPPEL FAMILY TRUST, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN WILKER; TONKON TORP, LLP, DOES 1-10, <br> Defendants. | CASE NO.:  5:24-cv-06457-NW <br><br> **PLAINTIFFS' RESPONSE TO COURT'S OSC WHY SANCTIONS SHOULD NOT ISSUE** <br><br> **HEARING INFO:** <br> **Date:**   March 13, 2026 <br> **Time:**   9:00 a.m. <br> **Dept.:**   Courtroom 3 <br><br> **Action Filed:** July 25, 2024 |

TO THIS HONORABLE COURT, ALL PARTIES AND THEIR REPRESENTATIVES:

Plaintiffs Gary Merle Koeppel and Emma K. Koeppel, through their undersigned counsel, submit this response to the Court's Order to Show Cause regarding potential sanctions directed to counsel. Counsel respectfully address the issues identified in the Court's Order and explain the circumstances surrounding the events referenced by the Court.

The Order to Show Cause concerns conduct by counsel during discovery and pretrial preparation. Counsel therefore address those issues directly and respectfully explains the circumstances that gave rise to the matters referenced by the Court.

**Table of Contents**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 4

I. INTRODUCTION ................................................................................................................ 4

II. CASE STATEMENT .......................................................................................................... 4

III. PLAINTIFFS COMPLIED WITH FEDERAL RULES OF PROCEDURE AND THE COURT ORDERS ..................................................................................................................... 5

   A. Plaintiffs Complied With Discovery Orders ................................................................. 5

   B. Disputes Arose from Defendants' Attempts to Narrow Plaintiffs' Claims and Expand Their Defenses Contrary to the Court's Prior Ruling ........................................................... 8

   C. Defendants Attempt to Attribute Fault to Plaintiffs' Counsel Despite the Court's Discovery Ruling ..................................................................................................................... 10

   D. Disagreements Regarding Pretrial Materials ............................................................. 11

      1) Many of Defendants' Proposed Exhibits Are Irrelevant to the Issues for Trial ........... 11

      2) Defendants' Proposed "Undisputed Facts" Contained Legal Conclusions and Argument 13

   E. Plaintiffs' Daubert Motion ........................................................................................... 13

   F. Plaintiffs Positions Legally Justified ............................................................................ 14

IV. The Record Does Not Support the Imposition of Sanctions ........................................ 14

V. CONCLUSION ................................................................................................................... 15

Law Offices of Ronald H. Freshman
3040 Skycrest Drive
Fallbrook, CA 92028
Tel. (858) 756-8288

**US and State Supreme Courts**

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) ........................................ 9

Viner v. Sweet, 30 Cal. 4th 1232, 1241 (2003).......................................................................... 12

Yvanova v. New Century Mortg. Corp., 62 Cal. 4th 919, 927 (2016).......................................... 5

**Federal 9th Circuit Court**

Asea, Inc. v. Southern Pacific Transportation Co., 669 F.2d 1242, 1245 (9th Cir. 1981) 10, 14, 15

Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000)........................................... 10

Fink v. Gomez, 239 F.3d 989, 991–94 (9th Cir. 2001) ....................................................... 14, 15

Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992).............................. 10

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018)................................. 12

United States v. Hitt, 981 F.2d 422, 424 (9th Cir. 1992)............................................................ 13

Wong v. Regents of the Univ. of Cal., 410 F.3d 1052, 1060 (9th Cir. 2005).............................. 10

**Cases**

Mattco Forge, Inc. v. Arthur Young & Co., 52 Cal. App. 4th 820, 834 (1997) .......................... 12

Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 170 (D. Nev. 1996) ...10, 14, 15

**Rules**

FRCP, Rule 12................................................................................................................... 8, 9

FRCP, Rule 50................................................................................................................... 8, 9

FRCP, Rule 56................................................................................................................... 8, 9

**Law Offices of Ronald H. Freshman**
3040 Skycrest Drive
Fallbrook, CA  92028
Tel. (858) 756-8288

Law Offices of Ronald H. Freshman
3040 Skycrest Drive
Fallbrook, CA 92028
Tel. (858) 756-8288

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs complied with the Court's pretrial directives and participated in the preparation of discovery and pretrial materials in accordance with the Federal Rules of Civil Procedure. The disputes that arose did not result from any refusal by Plaintiffs to engage in the pretrial process, but from Defendants' repeated attempts to narrow or eliminate Plaintiffs' claims through pretrial filings rather than through the dispositive procedures provided by the Federal Rules.

In particular, Defendants sought to remove Plaintiffs' breach-of-contract claim entirely, alter the governing causation standard for the breach-of-fiduciary-duty claim by substituting a "but-for" standard for the applicable substantial-factor standard, and restrict categories of damages the Court had already declined to remove from the case. Plaintiffs could not agree to treat claims that remain part of the operative complaint as though they had already been adjudicated.

The parties ultimately reached an impasse after multiple rounds of meet-and-confer discussions because Defendants insisted on resolving these issues through pretrial materials rather than through the procedures required by the Federal Rules of Civil Procedure. By insisting that Plaintiffs remove claims that remain pending and adopt positions inconsistent with the Court's prior rulings, Defendants effectively thwarted the preparation of joint pretrial submissions. The resulting disputes therefore reflect Defendants' attempts to alter the scope of the case outside those Rules—not any failure by Plaintiffs to participate in the pretrial process. Accordingly, Plaintiffs respectfully request that the Court decline to impose sanctions.

## II. CASE STATEMENT

This action arises from Plaintiffs' claims for legal malpractice, breach of fiduciary duty, and breach of contract against Defendants Steven Wilker and Tonkon Torp LLP. The claims concern Defendants' representation of Plaintiffs from July 29, 2022 through October 2, 2023 in litigation involving the creditor identify and threatened foreclosure of Plaintiffs' residence.

At the time Defendants undertook the representation, the identity of the lawful creditor was a central issue in the underlying litigation. The representation included determining the proper party entitled to enforce the debt and protecting Plaintiffs' interests in the face of a pending risk of

nonjudicial foreclosure. *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 927 (2016).

As foreclosure became imminent, Plaintiffs pursued a tender strategy to resolve the dispute and prevent foreclosure. Plaintiffs allege that Defendants undermined that effort through unauthorized, undisclosed communications with the prospective lender that resulted in the withdrawal of the proposed financing.

Plaintiffs ultimately reinstated the loan, incurring approximately $40,000 in charges and fees, lost valuable claims, incurred additional legal expenses to resolve the resulting issues, and suffered emotional distress. Plaintiffs seek recovery of those damages and disgorgement of fees arising from Defendants' alleged malpractice and related breaches.

## III. PLAINTIFFS COMPLIED WITH FEDERAL RULES OF PROCEDURE AND THE COURT ORDERS

### A. Plaintiffs Complied With Discovery Orders

The discovery disputes in this case did not arise from any refusal by Plaintiffs to meet and confer. Rather, the disputes arose from Defendants' insistence on presenting the same discovery issue through multiple discovery mechanisms rather than addressing it through a single consolidated submission.

Between August 29, 2025 and November 14, 2025, Defendants served four sets of Requests for Production seeking approximately ten years of documents relating to prior litigation, communications with counsel, and other materials far outside the period of Defendants' representation, which ran from July 29, 2022 through October 2, 2023. Plaintiffs produced all relevant, non-privileged documents responsive to those requests and asserted objections directed primarily to the temporal scope of the requests and privilege.

Because Defendants insisted on production well beyond the time period of the representation at issue, Plaintiffs sought relief from the Court. Plaintiffs initially attempted to proceed through a noticed motion for protective order to prevent the November 21, 2025 deposition of Mr. Koeppel from occurring while the discovery dispute remained pending. Upon learning that the Court required discovery disputes to proceed through the magistrate judge's joint-letter procedure, Plaintiffs followed that process.

5
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF RE: BREACH OF CONTRACT; FIDUCIARY DUTY AND EMOTIONAL DAMAGES**

Law Offices of Ronald H. Freshman
3040 Skycrest Drive
Fallbrook, CA 92028
Tel. (858) 756-8288

At Mr. Freshman's direction, paralegal Alexis Fisher attempted to calendar a hearing for the motion and contacted the courtroom deputies to determine the proper procedure. In doing so, she learned that discovery disputes were required to proceed through Magistrate Judge Cousins' procedures rather than through a noticed motion. During that process Ms. Fisher made several inquiries to the clerks in an effort to understand the correct procedure. (Fisher Decl., generally.) Once it became clear that the issue needed to proceed through Magistrate Judge Cousins' discovery procedures, Mr. Freshman engaged with the Court through the appropriate discovery-dispute process.

The same temporal-scope dispute then appeared across multiple discovery vehicles, including six third-party subpoenas served by Defendants between November 10 and November 14, 2025 and expanded deposition demands directed at Plaintiffs' counsel and his paralegal.

The discovery dispute concerned a single legal issue: the permissible temporal scope of discovery relative to Defendants' representation. Because that issue arose across several discovery devices—including requests for production, subpoenas, and deposition demands—Plaintiffs proposed presenting the dispute through a single consolidated discovery letter so the Court could resolve the common legal question efficiently.

Defendants declined that approach and instead insisted that each discovery device be addressed through separate joint discovery submissions. As a result, the same underlying legal dispute was presented through multiple filings tied to different discovery mechanisms by Defendants. Plaintiffs declined to participate in duplicative submissions addressing the identical issue.

This disagreement resulted in extensive meet-and-confer correspondence and communications with the court. (Freshman Decl., Exh. 1, email exchanges regarding joint letters.) Plaintiffs ultimately submitted a joint discovery letter using the materials Defendants had provided to date. (Doc. 32.) Defendants demanded that Plaintiffs' letter be withdrawn, asserting that it did not separately address each discovery mechanism they had invoked and that additional meet-and-confer efforts were required for each device. Defendants then proceeded to file multiple discovery letters addressing the same underlying dispute through different discovery mechanisms. (Doc. 33, 34, 37, 43) Plaintiffs declined to participate in those duplicative filings.

Concurrently, depositions and expert discovery proceeded. Mr. Wilker was deposed on December 4, Mr. Balmer on December 9, and Mr. Koeppel was deposed for approximately 5.5 hours on December 9, 2025 and, pursuant to Judge Cousins' order, completed the deposition on January 2, 2026. Fact discovery closed on December 15, 2025. Expert reports were exchanged on December 2, 2025, and Defendants served their rebuttal expert report dated December 31, 2025 on January 2, 2026. Although the deadline for expert depositions had passed, Plaintiffs nevertheless cooperated in making Plaintiffs' expert available for deposition on January 15, 2026 so that Defendants could complete their expert discovery.

At the subsequent Informal Discovery Conference, the Court directed that the deposition of Mr. Koeppel proceed and that Plaintiffs withdraw their objections to the deposition of third-party witness William Paatalo. The Court further ruled that no additional document production was required and denied Defendants' request to depose Mr. Freshman or Ms. Cromwell, explaining that Defendants were too late in the litigation to attempt to make counsel a witness. (Doc. 48.)

Plaintiffs complied immediately with that ruling. Mr. Koeppel completed his deposition on January 2, 2026, and Plaintiffs notified Mr. Paatalo that Plaintiffs' objections had been overruled and that he should cooperate with the deposition process. (Freshman Decl. ¶ 20, Exh. 2.) Mr. Paatalo raised his own objections under Rule 45, which were resolved through the subpoena process. Mr. Paatalo ultimately appeared for deposition on February 24, 2026.

Defendants produced approximately 27,000 pages of documents, many of which appeared to consist of publicly available filings or litigation records unrelated to the limited time period or the issues in this case. The volume and nature of that production illustrate the expansive scope of discovery Defendants pursued, extending well beyond the period of Defendants' representation. Plaintiffs nonetheless reviewed and addressed the production in good faith despite the volume of materials produced.

These events demonstrate that Plaintiffs did not refuse to meet and confer or fail to comply with discovery directives. Rather, Plaintiffs attempted to streamline the presentation of disputes consistent with the Court's discovery procedures. The resulting complications arose from Defendants' insistence on presenting the same legal dispute through multiple discovery

7
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF RE: BREACH OF CONTRACT; FIDUCIARY DUTY AND EMOTIONAL DAMAGES**

mechanisms. Where the Court directed further action, Plaintiffs complied promptly. The record therefore reflects a procedural disagreement—not any failure by Plaintiffs to participate in discovery.

**B. Disputes Arose from Defendants' Attempts to Narrow Plaintiffs' Claims and Expand Their Defenses Contrary to the Court's Prior Ruling**

Several of the disagreements during preparation of the joint pretrial materials arose from Defendants' attempts to narrow Plaintiffs' claims and expand their defenses through pretrial filings rather than through the procedures provided by the Federal Rules of Civil Procedure (i.e. 12, 56, 50).

During preparation of the Neutral Joint Case Statement, jury instructions, and verdict form, Defendants insisted that Plaintiffs omit the breach-of-contract claim entirely. Each draft of the Neutral Joint Case statement sent to Defendants was returned edited and removed the breach of contract claim. Plaintiffs could not agree to that position because the claim remains part of the operative complaint and has never been dismissed or adjudicated by the Court. The purpose of the Neutral Joint Case Statement is to identify the claims and defenses that remain for trial—not to resolve legal disputes regarding the viability of claims. Likewise, jury instructions and verdict forms address the law applicable to claims that remain in the case at the time of trial; they are not procedural mechanisms for eliminating claims from the case. As a consequence, two different statements were submitted to the Court. (Doc. 95)

Nevertheless, Defendants' proposed "Claims and Defenses" instruction removed the breach-of-contract claim entirely and proposed presenting the case to the jury as involving only two claims: legal malpractice and breach of fiduciary duty. (Doc. 102 at 45.)

Defendants also proposed damages instructions, *again* removing the breach of contract, and limiting recoverable damages to "sums paid to reinstate the Koeppels' mortgage." Plaintiffs objected because that limitation reflects omission of a claim, and a disputed legal issue concerning the scope of damages rather than a neutral burden-of-proof instruction. (Doc. 102 at 52.)

Defendants' proposals also attempted to expand their defenses by attributing fault to Plaintiffs' counsel—an issue the Court had already addressed during discovery. (Doc. 48 at p. 3:

Law Offices of Ronald H. Freshman
3040 Skycrest Drive
Fallbrook, CA 92028
Tel. (858) 756-8288

1  4-14; see also Doc. 102 at p. 45(identifying counsel); p. 80, 85-naming Freshman; see also
2  Defendant's Verdict Form.) Plaintiffs therefore objected because those proposals sought to
3  reintroduce matters outside the scope the Court had already defined.

4        Defendants also proposed jury instructions suggesting suppression or destruction of
5  evidence, despite the absence of any finding by the Court supporting such an instruction.
6  Defendants introduced those proposed instructions at the final stages of the pretrial process without
7  identifying any factual or legal basis for them and demanded Plaintiffs' position before providing
8  any supporting argument or authority. (Doc. 102 at 77–78, 86.)

9        These disputes were not about the wording of jury instructions. Rather, they arose because
10 Defendants attempted to adjudicate or narrow Plaintiffs' claims and expand their defenses through
11 the pretrial instruction process itself. Defendants also proposed instructions suggesting
12 suppression or destruction of evidence even though no motion, evidentiary record, notice, or Court
13 finding existed that would support such an instruction.

14       Federal procedure does not permit a party to remove claims from a case in that manner.
15 Claims may be resolved only through the procedural mechanisms provided by the Federal Rules
16 of Civil Procedure, including a motion to dismiss under Rule 12, summary judgment under Rule
17 56, or judgment as a matter of law under Rule 50. See FRCP, Rules 12, 50, 56. Where a claim has
18 not been dismissed or resolved through those procedures, it remains part of the case and must be
19 presented to the jury with the applicable legal instructions. *Reeves v. Sanderson Plumbing Prods.,*
20 *Inc.*, 530 U.S. 133, 150 (2000).

21       Because Defendants never obtained dismissal or summary judgment as to Plaintiffs'
22 breach-of-contract claim—and because the Court had already limited the scope of Defendants'
23 fault-shifting theories—Plaintiffs could not agree to remove that claim or adopt Defendants'
24 proposed instructions.

25       The parties therefore reached an impasse not because Plaintiffs refused to meet and confer,
26 but because Defendants insisted that Plaintiffs abandon claims that remain pending before the
27 Court and adopt defenses beyond the scope the Court had already defined. Once Defendants treated
28 those issues as though they had already been resolved, further meet-and-confer discussions could

**Law Offices of Ronald H. Freshman**
3040 Skycrest Drive
Fallbrook, CA 92028
Tel. (858) 756-8288

not resolve the dispute. *Asea, Inc. v. Southern Pacific Transportation Co.,* 669 F.2d 1242, 1245 (9th Cir. 1981); *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 170 (D. Nev. 1996).

**C. Defendants Attempt to Attribute Fault to Plaintiffs' Counsel Despite the Court's Discovery Ruling**

Defendants have also attempted to inject Plaintiffs' counsel, attorney Ronald Freshman, into the case as a source of comparative fault despite the Court's prior discovery ruling limiting that theory.

Although Defendants pleaded a generic "fault of others" defense, they did not timely pursue discovery directed to Mr. Freshman during the discovery period. When Defendants later sought to depose Mr. Freshman and paralegal Kimberly Cromwell, the Court denied that request, finding that such discovery would not be proportional to the needs of the case and would risk privilege disputes and potential recusal of Plaintiffs' counsel shortly before trial. (Doc. 48 at 3:4–14.) The Court therefore declined to expand the case to litigate the conduct of Plaintiffs' counsel.

Despite that ruling, Defendants continue to reference Mr. Freshman in pretrial filings, including their Request for Judicial Notice, proposed undisputed facts, and proposed verdict form, attempting to frame him as a source of "willful suppression" or comparative responsibility. (Doc. 102, RJN at 48, 78, 80; Defendants' Proposed Verdict Form.)

Federal courts have broad discretion to enforce scheduling orders and exclude theories that were not properly developed during discovery. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (scheduling orders must be enforced to preserve orderly case management); *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) (district courts may exclude late theories or evidence that would disrupt the schedule); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (rejecting attempts to introduce new liability theories late in litigation).

Having failed to pursue discovery on that theory and after the Court declined to expand discovery to include Plaintiffs' counsel, Defendants cannot now attempt to reintroduce the same theory through pretrial filings or proposed jury materials.

The disputes that arose during preparation of the pretrial materials therefore stem from Defendants' continued attempts to expand the case beyond the scope established by the Court's discovery rulings—not from any failure by Plaintiffs to participate in the meet-and-confer process.

### D. Disagreements Regarding Pretrial Materials

Many of the deficiencies noted during the Court's February 18, 2026 pretrial conference arose because Defendants attempted to use the pretrial process to narrow Plaintiffs' claims and expand their defenses rather than through the procedural mechanisms provided by the Federal Rules of Civil Procedure. Those disputes affected several components of the pretrial submissions, including the Neutral Joint Case Statement, proposed undisputed facts, jury instructions, verdict forms, and exhibit stipulations.

For example, Defendants sought to remove Plaintiffs' breach-of-contract claim through the jury-instruction process, the verdict form, and the Neutral Joint Case Statement. Plaintiffs could not agree to omit a claim that remains part of the operative complaint and has never been dismissed or adjudicated by the Court.

#### 1) Many of Defendants' Proposed Exhibits Are Irrelevant to the Issues for Trial

Defendants requested that Plaintiffs broadly stipulate to the admissibility of more than 200 exhibits. Plaintiffs reviewed those exhibits and declined to stipulate where relevance remained disputed.

More than fifty of Defendants' proposed exhibits consist of materials drawn from unrelated litigation matters such as Robinson, Johnson, Rivera, Paatalo. (Doc. 106, starting at Exh. 503, and at 701-712, 730, 733) At the last-minute Exhibits 503-509, 519, 523, 530 were inserted for "judicial notice" but those remain irrelevant to the issues for trial (and improperly inserted into the joint exhibit list, though both attorneys signed.)  Defendants contend those materials are relevant because Plaintiffs' expert served as counsel in one case and Plaintiffs' counsel, Mr. Freshman, served as counsel in another.

That theory is misplaced. The Robinson and Johnson matters involve separate quiet-title disputes brought by different parties under different legal theories. Those actions did not involve claims under the California Homeowner Bill of Rights, did not concern declaratory relief regarding

the identity of the lawful creditor, and did not involve the tender strategy that forms the basis of Plaintiffs' malpractice claims in this case. The outcomes of those matters therefore do not make any fact of consequence in this action more or less probable and are not relevant under Federal Rule of Evidence 401.

Even if those cases had marginal relevance, their introduction would create a substantial risk of jury confusion and unnecessary mini-trials concerning the facts, claims, and procedural history of unrelated litigation. The jury would be required to evaluate the merits of other lawsuits involving different parties and legal theories, diverting attention from the central issues in this case—whether Defendants breached their duties to Plaintiffs during the representation at issue and whether that conduct caused Plaintiffs' damages. Any limited probative value would therefore be substantially outweighed by the risks of confusion, delay, and waste of time under Federal Rule of Evidence 403.

In a legal-malpractice action, causation is evaluated through the "case-within-the-case" framework, which asks what would have occurred in the client's underlying litigation absent the attorney's alleged negligence. *Viner v. Sweet*, 30 Cal. 4th 1232, 1241 (2003); *Mattco Forge, Inc. v. Arthur Young & Co.*, 52 Cal. App. 4th 820, 834 (1997). Evidence concerning unrelated lawsuits involving different parties and legal theories does not assist the jury in determining that question and instead risks creating collateral disputes unrelated to the issues to be tried.

Defendants have also attempted to introduce the Robinson and Johnson matters through a Request for Judicial Notice. Judicial notice, however, does not establish the relevance or admissibility of materials for trial. Courts may take notice of the existence of filings in other cases, but not for the truth of disputed facts or as evidence bearing on the merits of a different action. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Accordingly, even if the Court may take notice that the Robinson or Johnson actions exist, the outcomes and factual assertions in those matters remain collateral to the issues the jury must decide in this case.

Defendants' exhibit list also included materials intended primarily for Court review, including expert reports and related materials. Plaintiffs declined to stipulate to those exhibits

because their admissibility and purpose at trial remain disputed.

Parties are not required to stipulate to the admissibility of evidence where legitimate relevance or prejudice concerns remain. *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). Plaintiffs therefore reviewed Defendants' exhibit list and evaluated the proposed exhibits under the Federal Rules of Evidence, declining stipulation only where relevance or admissibility remained genuinely contested. The absence of stipulations reflects substantive evidentiary disagreements—not any refusal by Plaintiffs to review the exhibits or participate in the meet-and-confer process.

### 2) Defendants' Proposed "Undisputed Facts" Contained Legal Conclusions and Argument

Defendants' proposed "undisputed facts" also contributed to the parties' inability to finalize the pretrial materials. Many of Defendants' proposed statements were not neutral factual propositions but instead consisted of legal conclusions, argumentative characterizations, or narrative descriptions drawn from unrelated litigation.

Plaintiffs objected to those statements where they did not constitute actual undisputed facts or where they addressed issues that remain disputed in this case.

The purpose of a statement of undisputed facts is to identify neutral factual propositions that are both undisputed and material to the issues for trial. Plaintiffs therefore declined to stipulate to statements that incorporated legal arguments, editorialized characterizations, or factual narratives from unrelated proceedings.

The resulting disagreements regarding the pretrial materials therefore reflect substantive legal disputes concerning the relevance and scope of the issues for trial—not any refusal by Plaintiffs to participate in the meet-and-confer process.

///

///

### E. Plaintiffs' Daubert Motion

Plaintiffs' counsel filed a Daubert motion in January 2026 without first seeking leave of Court under the scheduling order. The Court promptly vacated that motion as untimely, and

Plaintiffs respect that ruling. In hindsight, Plaintiffs' counsel recognizes that leave should have been sought before filing. The motion was filed shortly after the parties exchanged expert reports (initial reports on December 2, 2025; Defendants expert rebuttal report was served on January 2, 2026) and was intended to address issues raised in those reports. Once the Court vacated the motion, Plaintiffs did not refile or otherwise pursue the issue. The matter was therefore resolved immediately and did not affect the case schedule or require further Court intervention. Plaintiffs apologize to the Court for the oversight and appreciated the Court's prompt clarification of the scheduling requirement.

### F. Plaintiffs Positions Legally Justified

The positions Plaintiffs took during discovery and pretrial preparation were grounded in the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Plaintiffs participated in multiple rounds of meet-and-confer discussions regarding these issues. Once the parties' respective legal positions were fully articulated and it became clear that no agreement could be reached, the parties reached an impasse and further discussion was futile. The meet-and-confer requirement requires a good-faith effort to resolve disputes, not endless negotiation once the parties' positions are clear. *Asea*, 669 F.2d at 1245; *Shuffle Master*, 170 F.R.D. at 170 Accordingly, the record reflects that Plaintiffs' positions were not taken for purposes of delay or obstruction. Rather, Plaintiffs relied on the governing procedural and evidentiary rules in responding to Defendants' proposals during the pretrial process.

## IV. The Record Does Not Support the Imposition of Sanctions

Sanctions are generally reserved for circumstances involving bad faith, willful disobedience of a court order, or conduct that unreasonably disrupts the orderly administration of the case. *Fink v. Gomez*, 239 F.3d 989, 991–94 (9th Cir. 2001). The record does not reflect bad faith, willful disobedience of a court order, or conduct by counsel that would warrant sanctions. Rather, the disputes arose because Defendants repeatedly attempted to narrow Plaintiffs' claims and expand their defenses through pretrial materials instead of through the procedural mechanisms provided by the Federal Rules of Civil Procedure.

As described above, the disputes that arose during discovery and preparation of the pretrial materials were driven by Defendants' attempts to narrow Plaintiffs' claims and expand their

defenses through pretrial materials rather than through the procedures provided by the Federal Rules of Civil Procedure. Plaintiffs nevertheless participated in multiple rounds of meet-and-confer discussions and attempted to resolve those issues consistent with the Federal Rules of Civil Procedure and the Court's prior rulings.

Plaintiffs addressed these issues, including any concerns over duplicativeness, in a separate motion and through evidence submitted during discovery and pretrial. At trial, with claims preserved and evidence ready, the record shows good-faith preservation rather than disruption. This reflects ordinary litigation at the trial stage, not willful disobedience warranting sanctions. *Fink v. Gomez*, 239 F.3d 989, 991–94 (9th Cir. 2001) .

Once Defendants insisted that Plaintiffs remove claims that remain part of the operative complaint, adopt damages limitations that remain disputed, and advance theories concerning Plaintiffs' counsel that the Court had already limited, the parties reached an impasse. The meet-and-confer requirement requires a good-faith effort to resolve disputes, not endless negotiation once the parties' positions are clear. *Asea*, 669 F.2d at 1245; *Shuffle Master*, 170 F.R.D. at 170.

The record therefore reflects ordinary litigation disputes regarding the scope of claims and evidence—not bad faith or noncompliance with the Court's orders. Accordingly, Plaintiffs respectfully request that the Court discharge the Order to Show Cause and decline to impose sanctions.

### V.     CONCLUSION

Plaintiffs and their counsel are not nonplussed regarding the impact on the Court, its staff, or the delay resulting from the parties' inability to finalize the pretrial materials. Counsel recognize the burden such disputes impose on the Court and regret that the discovery and pretrial process required additional attention from the Court. The disagreements that arose reflected genuine disputes regarding the scope of the claims, the admissibility of certain evidence, and the content of the pretrial materials. In responding to those disputes, counsel sought to preserve Plaintiffs' right to present claims that remain part of the operative complaint while complying with the Court's prior rulings. Plaintiffs did not intend to disrupt the Court's trial schedule, and counsel acknowledge that the procedural disputes between the parties contributed to the difficulties in

Law Offices of Ronald H. Freshman
3040 Skycrest Drive
Fallbrook, CA 92028
Tel. (858) 756-8288

finalizing the pretrial submissions. Counsel appreciate the Court's concerns expressed in the Order to Show Cause and have taken them seriously. Accordingly, Plaintiffs respectfully request that the Court decline to impose sanctions.

**LAW OFFICE OF RONALD H. FRESHMAN**

Date: March 6, 2026       /s/Ronald H. Freshman
                          Ronald H. Freshman, Attorney for Plaintiffs

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF RE: BREACH OF CONTRACT; FIDUCIARY DUTY AND EMOTIONAL DAMAGES**

**Law Offices of Ronald H. Freshman**
3040 Skycrest Drive
Fallbrook, CA 92028
Tel. (858) 756-8288

# PROOF OF SERVICE

I am employed in the County of Contra Costa, State of California. I am over the age of 18 and not a party to the within action; my business address is PO Box 631, Brentwood, California 94513. On the date indicated below, I served the within

- **PLAINTIFFS' RESPONSE TO COURT'S OSC WHY SANCTIONS SHOULD NOT ISSUE**
- **DECLARATION OF RONALD H. FRESHMAN IN SUPPORT OF PLAINTIFFS' RESPONSE TO COURT'S OSC WHY SANCTIONS SHOULD NOT ISSUE**
- **DECLARATION OF ALEXIS FISHER IN SUPPORT OF PLAINTIFFS' RESPONSE TO COURT'S OSC WHY SANCTIONS SHOULD NOT ISSUE**

on the interested parties in said action by emailing addressed as follows:

> Jessica MacGregor, Esq. (SBN 168777)
> jmacgregor@longlevit.com
> **LONG & LEVIT, LLP**
> 465 California Street, Suite 500
> San Francisco, CA 94104
> Telephone: (415) 397-2222
> Facsimile: (415) 397-6392
> *Attorneys for Defendant: Steven Wilker and Tonkon Torp, LLP.*

__X__ **BY ELECTRONIC SERVICE** - Pursuant to Federal Rules of Civil Procedure, ECF Filing System,, and/or by agreement of the parties, I caused a PDF version of said document(s) to be served by electronic mail to the parties listed below by using their email addresses sent either directly by the undersigned OR via a third-party electronic service provider.

__X__ **STATE** - I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Dated: March 6, 2026

_____
Alexis Fisher