UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GARY MERLE KOEPPEL, et al.,

Plaintiffs,

v.

STEVEN WILKER, et al.,

Defendants.

Case No. 24-cv-06457-NW

**ORDER RE THE MONTANA ACTION AND THE APRIL 14, 2026 PRETRIAL CONFERENCE**

Re: ECF No. 135

After nearly two years of litigation, the instant action is set to start trial on April 21, 2026. Despite the imminent start date, this Order concerns a significant discovery dispute that arose in October of 2025 and remains ongoing. As of today, April 16, 2026, the dispute, which is discussed in depth below, appears resolved by a Court Order from the District of Montana that requires the production of more than 5,000 documents by no later than 4:00 p.m. PST this evening. The potential ramifications of the production on the coming trial will not be clear until Defendants have had a chance to review the production. The Court issues this Order to clarify its understanding of the events related to the underlying discovery dispute and to document the Court's current thinking.

## I.    DEFENDANTS SEEK DISCOVERY FROM THIRD-PARTY WILLIAM PAATALO

Defendants served third-party William Paatalo with a subpoena to produce documents relevant to this action on October 23, 2025, and a deposition subpoena on November 4, 2025. *See* ECF No. 51-1 at 3. Notably, Plaintiffs' initial Rule 26 disclosures listed third party Mr. Paatalo as an individual with discoverable information related to this action. *Id.* at 167. Both Mr. Paatalo and Plaintiffs independently objected to both subpoenas on a number of grounds, one of which

was privilege. *Id.* at 3. Defendants eventually moved to compel Mr. Paatalo's compliance, which Magistrate Judge Cousins granted on December 18, 2025. ECF No. 48. Judge Cousins specifically found that Mr. Paatalo and Plaintiffs' objections to the subpoenas were "baseless and [that] the maneuvering to prevent the deposition demonstrate[d] gamesmanship." *Id.* When Mr. Paatalo remained avoidant in scheduling his deposition, Judge Cousins issued an Order on December 30, 2025, directing Mr. Paatalo to comply with the subpoenas and informing him that any challenge to the substance of the subpoenas could only be addressed in the place where compliance was required, namely Mr. Paatalo's home state of Montana. ECF No. 50.

## II.    MR. PAATALO BRINGS SUIT IN MONTANA

On January 20, 2026, Mr. Paatalo (acting *pro se*) filed a motion to modify his subpoenas in the District Court for the District of Montana. *See generally In re Paatalo*, No. 9:26-mc-00001 (D. Mont. filed Jan. 20, 2026) ("Montana Action"). Defendants quickly filed an opposition, and Mr. Paatalo filed a reply. *Id.* Shortly thereafter on February 17, 2026, the Montana Court denied Mr. Paatalo's motion on timeliness grounds. Montana Action, ECF No. 14. The Court explained that Mr. Paatalo had failed to properly and timely respond to the subpoenas when they were initially served, so he "ha[d] waived *any* objection to Defendants' subpoena." *Id.* (emphasis added).[1] The Court further noted that "Defendants had not moved to compel [Mr.] Paatalo's compliance with the subpoena[s]" but urged Mr. Paatalo not to wait "for Defendants to file a motion" as it would likely result in Mr. Paatalo "shoulder[ing] the fees and costs associated with that motion." *Id.*

On February 23, 2026, Mr. Paatalo provided Defendants his "response and objections" to the subpoena for documents. Montana Action, ECF No. 17-2. Within, Mr. Paatalo impermissibly reasserted all waived objections including those relating to privilege. He explained that he reviewed a "total email population . . . of approximately 6,143 emails" but produced only 404 documents total. *Id.* According to Mr. Paatalo, these were the only "non-privileged, responsive emails relating to the relevant time period." *Id.* On February 24, 2026, Mr. Paatalo attended "his

---

[1] The Montana Court more exhaustively recounts the facts leading to Mr. Paatalo's motion in its February 17, 2026 Order.

United States District Court
Northern District of California

properly noticed deposition and asserted claims of attorney-client privilege, attorney work product, or trade secrets throughout the deposition," though Mr. Paatalo himself is not a lawyer nor was he engaged to assist one.  Montana Action, ECF No. 16; *see also United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (explaining that the attorney-client privilege only "extend[s] to communications with third parties who have been engaged to assist the attorney in providing legal advice" when the communications relate to the solicitation or provision of legal advice.).

As a result of Mr. Paatalo's reassertion of his waived objections and his continued refusal to comply with the subpoenas, Defendants filed a motion to compel on March 10, 2026.  Montana Action, ECF No. 15.  The Montana Court swiftly granted that motion and ordered Mr. Paatalo to produce "all responsive, withheld documents and/or correspondence" by no later than April 4, 2026.  Montana Action, ECF No. 19 at 3.

### III.    MR. KOEPPEL MOVES TO INTERVENE IN THE MONTANA ACTION

On April 2, 2026, Plaintiff in the instant action, Mr. Gary Koeppel, appearing *pro se*, filed a motion to intervene and stay the Court's April 4, 2026 production deadline.  Montana Action, ECF No. 21.  According to Mr. Koeppel, a large number of the documents in Mr. Paatalo's possession were covered by privilege belonging to Mr. Koeppel.  *Id.*  This Court notes that the motion itself is suspiciously sophisticated: though Mr. Koeppel is not a lawyer, his motion reads as though it was written by a lawyer with case citations and complicated legal terms.

As the Montana Court explained in the Order it issued the following day, Mr. Koeppel had "placed the Court in the impossible position of having to address his request both on the eve of the April 4 disclosure deadline, and two weeks before the jury trial that is to proceed in the Northern District of California."  Montana Action, ECF No. 21.  The Court elected to stay the April 4, 2026 deadline through April 7, 2026, while Mr. Koeppel reviewed Mr. Paatalo's documents and generated "a detailed privilege log addressing every single document, written communication, or declarations subject to the Paatalo Document Subpoena that he believes should be withheld on privileged or work product grounds."  *Id.*  The Court would rule on the motion to intervene following its review of Mr. Koeppel's log.

United States District Court
Northern District of California

3

As the Montana Court later recounted in its Order of April 14, 2026:

> On April 7, Koeppel filed his privilege log, identifying 276 documents. (Doc. 23-1.) That same day, Paatalo filed a "Supplemental Notice of Compliance Clarifying Scope of Review," informing the Court that while he originally identified almost 6,000 documents as being responsive to the subpoena, he now believes that number to be 515 documents already produced and 433 emails he provided to Koeppel for inclusion in his privilege log. (Doc. 24.) On April 10, Defendants objected to both Koeppel's privilege log and to Paatalo's latest attempt to circumvent the explicit terms of this Court's prior March 25 order by redefining "responsive" materials. (Doc. 25.)

Montana Action, ECF No. 29.

On April 14, 2026, the Montana Court denied Mr. Koeppel's motion to intervene as untimely. *Id.* (explaining that Mr. Koeppel did not "seek to quash [the subpoena] on privilege grounds consistent with the 14-day time limit imposed by Rule 45" but instead filed a "request to intervene two days before Paatalo's disclosure deadline, approximately five months after the subpoena was issued and two weeks before trial."). The Court further ordered that Mr. Paatalo "must produce to Defendants all the documents originally identified as responsive in his February 23, 2026 'NonParty Response and Objection[],' (Doc. 17-2), on or before 5:00 p.m. on April 16, 2026 (no less than 6,143 emails)" irrespective of whether the documents appeared on Mr. Koeppel's privilege log. *Id.*

## IV.    THE COURT IN THE INSTANT ACTION LEARNS OF THE ACTIVITY IN THE MONTANA ACTION

As the events described above unfolded, this Court held a number of pretrial conferences with the parties in anticipation of their jury trial. Because the trial was set to begin on April 21, 2026,[2] the Court scheduled and subsequently held a pretrial conference to discuss juror questionnaires on April 14, 2026. On April 13, 2026, Defendants filed a notice with the Court that explained what had been (and still was) going on in Montana. ECF No. 135. Though the Court had known that Defendants had struggled to obtain discovery from Mr. Paatalo, the Court only

---

[2] The Court notes that the trial was initially scheduled to begin on March 2, 2026. For reasons set forth elsewhere on the record, the Court eventually reset the trial to April 21, 2026. *See* ECF No. 112.

United States District Court
Northern District of California

became aware of the continuing nature of those difficulties when it reviewed Defendants' filing. In the notice, Defendants sought leave to discuss these developments with the Court. *Id.*

The Court obliged Defendants and addressed the issue at the next day's conference. Upon reviewing the record in the Montana Action, the Court took note of a few things. First, despite Defendants' diligence in pursuing discovery from Mr. Paatalo following service of their subpoenas, there remained upwards of 5,000 unproduced documents that could be potentially relevant to this action to which Defendants did not presently have access. Second, Mr. Koeppel was deeply invested in keeping Mr. Paatalo's documents out of the hands of Defendants, so much so that he (1) objected to the subpoenas shortly after they were served and (2) filed a motion to intervene in the Montana Action. Third, counsel for Plaintiffs in this action, Mr. Ronald Freshman, did not appear on Mr. Koeppel's behalf in the Montana Action; Mr. Koeppel instead filed his motion *pro se*. This despite the fact that: (1) the Montana Action is entirely derivative of, and would not exist but for, the instant action; (2) Mr. Freshman had previously drafted and served objections to the Paatalo subpoenas on privilege grounds on behalf of the Koeppels; (3) Mr. Koeppel's motion was filed to protect the attorney-client communications he had *with Mr. Freshman* that were in Mr. Paatalo's possession; and (4) if Mr. Koeppel were directed to conduct a privilege review—and indeed, his motion contemplated and affirmatively requested that relief— Mr. Koeppel would almost certainly need Mr. Freshman's assistance in identifying those communications.

Accordingly, the Court asked Mr. Freshman about his involvement with Mr. Koeppel's *pro se* motion at the April 14, 2026 hearing. The Court reproduces an excerpt of the resulting colloquy below.[3]

> **THE COURT**: [MR. KOEPPEL] FILED AN EMERGENCY MOTION TO INTERVENE, ASSERTING ATTORNEY-CLIENT AND WORK-PRODUCT AND PRIVILEGE ISSUES. . . MR. FRESHMAN, DID YOU PARTICIPATE IN THAT WORK WITH HIM?
>
> **MR. FRESHMAN:** I REVIEWED THE DOCUMENT THAT HE

---

[3] Quotes from the hearing come from the rough version of the transcript made available to the Court and may differ somewhat from the final version of the transcript.

United States District Court
Northern District of California

PLANNED TO SEND JUST TO MAKE SURE THAT SPELLING WAS CORRECT AND THINGS OF THAT NATURE AND SORT OF THE OVERALL, BUT I WASN'T ACTING ON BEHALF OF HIM AS AN ATTORNEY SO MUCH AS JUST MAKING SURE THAT T'S WERE CROSSED AND THE I'S WERE DOTTED.

**THE COURT:** WHAT OTHER RELATIONSHIP COULD YOU HAVE POSSIBLY BEEN ACTING AS OTHER THAN AS HIS ATTORNEY? PARTICULARLY GIVEN THE FACT THAT . . . THAT CASE IS DIRECTLY LINKED TO THIS CASE? . . .

Rough. Tr.  Mr. Freshman did not at that time or anytime thereafter address the Court's question.

Shortly after this exchange, the Court inquired into Mr. Freshman's role in determining the alleged

privilege covering Mr. Paatalo's documents:

**THE COURT:** WHAT PRIVILEGE DOES [MR. KOEPPEL] HAVE?

**MR. FRESHMAN:** IF HE'S -- IF HE WROTE -- IF WE WENT BETWEEN OURSELVES, MR. KOEPPEL AND MYSELF OR MY TEAM.

**THE COURT:** AND HOW DOES MR. PAATALO HAVE IT?

**MR. FRESHMAN:** MR. KOEPPEL COULD HAVE SENT THAT -- SENT INFORMATION TO --

**THE COURT:** -- MR. PAATALO AND THEREFORE WAIVED THE PRIVILEGE, SO WHAT PRIVILEGE COULD THERE POSSIBLY BE?

**MR. FRESHMAN:** STRATEGY. WORK PRODUCT.

**THE COURT:** CAN YOU POINT ME TO SOMETHING THAT INDICATES THAT THERE IS SOME --

**MR. FRESHMAN:** I CAN'T POINT YOU TO A SPECIFIC E-MAIL, IF THAT IS WHAT YOU'RE ASKING.

**THE COURT:** NO, TO THE LAW, MR. FRESHMAN. WHAT BASIS IS THERE FOR ANY SORT OF PRIVILEGE FOR THAT? . . .

**MR. FRESHMAN:** I'M -- I CANNOT POINT YOU TO LAW THAT I'M AWARE OF. ALL I KNOW IS THAT -- MY UNDERSTANDING IS IF YOU'RE DOING -- IF THERE'S WORK PRODUCT INVOLVED OR IF THERE'S COMMUNICATIONS THAT'S SPECIFIC. I'M NOT SURE HOW HE GOT THAT, BUT THEY'RE, THEY'RE FRIENDS, AS WE'RE DISCOVERING, AND THAT MAY HAVE BEEN SHARED, BUT I DON'T KNOW. DID HE NECESSARILY WAIVE HIS PRIVILEGE BY PROVIDING THAT?

United States District Court
Northern District of California

**THE COURT:** MR. FRESHMAN, YOU JUST INDICATED TO ME THAT YOU REVIEWED THIS LOG. THAT YOU WENT OVER IT WITH HIM AND THIS LOG -- THIS PRIVILEGED LOG, IS 94-PAGES LONG AND IT HAS 276 ENTRIES IN IT. THAT YOU REVIEWED IT AND IT INDICATES THAT THERE IS AN ATTORNEY-CLIENT COMMUNICATION PRIVILEGE FOR VIRTUALLY ALL OF THEM, AND THEN YOU'VE ADDED A WORK-PRODUCT PRIVILEGE WITH SEEMINGLY NO BASIS FOR DOING SO.

*See* Rough Tr.

The Court finds that it cannot credit Mr. Freshman's representation that his help with the motion to intervene was limited to "mak[ing] sure that spelling was correct and things of that nature." Rough Tr. And the Court did not receive an answer, credible or otherwise, when it asked Mr. Freshman how he could or why he would be acting as anything *other* than Mr. Koeppel's legal counsel when he reviewed the motion. The Court further finds that Mr. Freshman either (1) directed Mr. Koeppel to designate certain emails as attorney work-product or attorney-client communication on specious reasoning or (2) he reviewed Mr. Koeppel's own designations and, despite having no supporting legal authority or factual basis to make those designation, Mr. Freshman made no attempts to correct them. These findings are extremely troubling, and the Court does not take them lightly.

Following the conversation with Mr. Freshman, the Court asked Defendants to explain what, if anything, they were asking the Court to do. Ms. Jessica MacGregor, lead counsel for Defendants, suggested that terminating sanctions or sanctions barring Mr. Paatalo from appearing at trial may be warranted. Ultimately, the Court concluded that it should defer taking any action until Defendants receive and have a chance to review Mr. Paatalo's production on April 16, 2026. As discussed on the record, Defendants shall inform the Court by the end of the day on April 17, 2026, how they would like to proceed. Sometime thereafter the Court will issue a ruling directly addressing Plaintiffs' conduct.

**IT IS SO ORDERED.**

Dated: April 16, 2026

Noël Wise
United States District Judge

United States District Court
Northern District of California

7