JESSICA R. MACGREGOR, Bar No. 168777
JOHN B. SULLIVAN, Bar No. 238306
ABIGAIL W. HENDERSON, Bar No. 338358
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, California 94104
Telephone:    (415) 397-2222
Facsimile:    (415) 397-6392
Email:        jmacgregor@longlevit.com
              jsullivan@longlevit.com
              ahenderson@longlevit.com

Attorneys for Defendants
STEVEN WILKER and TONKON TORP LLP

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GARY MERLE KOEPPEL, individual and as Trustee for the KOEPPEL FAMILY TRUST; EMMA K. KOEPPEL, individual and as Trustee for the KOEPPEL FAMILY TRUST,<br><br>        Plaintiffs,<br><br>        v.<br><br>STEVEN WILKER; TONKON TORP, LLP, DOES 1-10,<br><br>        Defendants. | Case No. 5:24-cv-06457-NW<br><br>**PLEADING CONCERNING RECENT PRODUCTION AND ACTIVITY IN MONTANA MATTER**<br><br>Action Filed:   July 25, 2024 |

Defendants, Steven Wilker and Tonkon Torp, submit this brief pursuant to the Court's Order of April 16 (Dkt. 142).

**I.     INTRODUCTION**

As of April 17, 2026, neither Mr. Paatalo nor Mr. Koeppel have produced over 5,000 documents despite being ordered to do so.  Mr. Paatalo was ordered to produce no fewer than 6,143 emails and other responsive documents by the end of the day on April 16.  He produced only 155 and submitted another compliance declaration attempting to justify his continued failure to comply with court orders.  To date, of the 6,143 responsive emails identified, Mr. Paatalo produced only

670, despite being ordered to do so three times.[1] He and Plaintiff have withheld approximately 5,473 emails. Based on the incomplete production and filings in Montana, it has become apparent that there are coordinated efforts between Mr. Paatalo, Mr. Koeppel and Mr. Koeppel's counsel to withhold documents that are both directly relevant to the issues to be tried in this matter and prejudicial to Plaintiffs' claims.

For example, only *yesterday*, "under compulsion" Mr. Paatalo produced two emails with Mr. Koeppel dated July 14 and 15, 2023, in which they agreed to fire Mr. Wilker because they were concerned his expressed skepticism about AMGAR would scuttle their hoped for scheme. See, MacGregor Decl., ¶16 Exhibits 11 and 12. Obviously, Mr. Koeppel believed these emails hurt his claims that Mr. Wilker was the reason he could not convince Mr. Schleining to participate in AMGAR.  The emails also would have supported Defendants' affirmative defense based on California's one-year statute of limitations (CCP §340.6).  But without the benefit of the emails, Defendants did not ask for an instruction (CACI 611) or include statute of limitations questions on the verdict form.  That is just one example of harm.  It is impossible to know what other relevant prejudicial evidence has been suppressed by Plaintiffs either directly or through concerted conduct with Mr. Paatalo, because neither has produced the balance of the 6,143 emails Mr. Paatalo was required to produce by the end of the day yesterday.

Defendants appreciate the Court's significant investment of resources of time, personnel and money that have been devoted to this case.  Delay of trial would prejudice the Court because these efforts and resources would have to be devoted to this matter a second time (after months of invested effort).  Defendants have also devoted hundreds of hours to trial preparation and incurred significant fees and expenses.  Delay of trial would prejudice Defendants because they would necessarily incur another significant pulse of fees and expenses to ramp up for trial again.  And of course, Defendants would like finality.  However, if trial is to proceed, it should be fair.  Plaintiffs' discovery abuses cast serious doubt on whether this can be achieved.  Below, Defendants suggest several potential approaches to the impossible predicament arising from Plaintiffs and Mr.

---

[1] Given the press of time, Defendants' review is not complete, but it appears no emails from 2024 or 2025 have been produced and only a handful from 2026.

Paatalo's conduct.

## II.    PROCEDURAL HISTORY

### A.    The Paatalo And Koeppel Documents: 5,473 Emails And Unaccounted For Other Documents Have Not Been Produced

Defendants will not recite the full history of discovery in this matter.  As is set forth in Dkt 51, Defendants propounded documents requests on Plaintiffs seeking all communications with Mr. Paatalo and a variety of other requests, served a deposition subpoena including a document request on Mr. Paatalo and also on Plaintiffs, to which both objected belatedly and noticed the depositions of Mr. Koeppel and Mr. Paatalo. Dkt. 51; MacGregor Decl ¶3, Ex. 1; ¶5, Ex. 2; ¶6, Ex.3. Plaintiffs did not file a motion to quash Defendants' document request on Mr. Paatalo. MacGregor Decl ¶4. These objections appear to have been coordinated both temporally and substantively. Dkts. 48 and 51; MacGregor Decl. ¶ 7; ¶8, Ex.4; ¶9, Ex. 5.

Plaintiffs and Mr. Paatalo failed to produce documents. Plaintiffs' motion to limit the scope of discovery to the one year when Mr. Wilker represented Plaintiffs was denied and Mr. Paatalo's deposition was ordered. Dkt 49.  Mr. Paatalo refused to sit for deposition or produce documents leading to motion practice in Montana.  MacGregor Decl. ¶ 10, Ex.6. Judge Molloy ordered Mr. Paatalo to sit for deposition and provided a framework to voluntarily produce documents or face a motion for contempt.  Montana Action, ECF No. 14.

On February 23, 2026, Mr. Paatalo provided Defendants his "response and objections" to the subpoena for documents. MacGregor Decl. ¶11. Within, Mr. Paatalo impermissibly reasserted all waived objections including those relating to privilege. He explained he reviewed a total email population of approximately 6,143 emails but produced only 404 documents total. Id.   He was deposed on February 24, 2026 and asserted privilege. MacGregor Decl. ¶11, Ex 7.

Defendants filed a motion to compel production of documents on March 10, 2026. The District Court for Montana granted Defendants' motion and ordered Mr. Paatalo to produce "all responsive, withheld documents and/or correspondence" by April 4, 2026.

On April 1, 2026, Mr. Paatalo produced an additional 111 responsive documents—not the 5,221 he previously identified. He appeared to withhold them on the basis of attorney-client

PLEADING CONCERNING RECENT PRODUCTION AND ACTIVITY IN MONTANA MATTER

privilege.  MacGregor Decl. ¶12, Ex. 8. On April 2, 2026, Plaintiff filed a motion to intervene and stay the court ordered April 4, 2026 production.[2] On April 3, 2026, the District Court for Montana stayed the April 4, 2026 deadline through April 7, 2026 and ordered Mr. Koeppel provide "a detailed privilege log addressing every single document, written communication, or declarations subject to the Paatalo Document Subpoena that he believes should be withheld on privileged or work product grounds."  Mr. Paatalo was ordered to produce any document not logged on April 8.

On April 7, 2026, Mr. Koeppel filed a Statement Regarding Privilege Log and Privilege Log. In his statement, he represented that "[t]he privilege log was prepared following a reasonable review of the responsive materials."  The privilege log asserted privilege as to approximately 276 documents.[3]  The same day, Mr. Paatalo provided a Supplemental Notice of Compliance Clarifying Scope of Review. In it, he represented that "approximately 433 emails" were sent to Mr. Koeppel for review and identification. Dkt. 143 repeats this assertion. Dkt. 143 at p. 3.[4]

On April 14, 2026, The Montana District Court ordered "Paatalo must produce to Defendants all the documents originally identified as responsive in his February 23, 2026 'Non-Party Response and Objection[],'  (Doc. 17-2), on or before 5:00 p.m. on April 16, 2026 (no less than 6,143 emails). That disclosure includes those documents included in Koeppel's privilege log. By that same date, Paatalo must also disclose any other documents, correspondence, and declarations that are responsive to the subpoena, including but not limited to the declarations identified in Request No.14, (see Doc. 3-5)." Montana Action, ECF No. 29.

On April 16, Mr. Paatalo produced 155, additional emails, none of which appear to be privileged. Only eighteen of them were logged by Mr. Koeppel.  This means, rather than the 6,143

---

[2] Service of the motion first was made by Mr. Freshman's office on behalf of Mr. Koeppel. MacGregor Decl. ¶ 14, Ex. 9.  Then, Mr. Freshman's legal assistant served the motion from a separate email account on behalf of Mr. Koeppel pro se. MacGregor Decl. ¶15, Ex 10.

[3] Mr. Freshman suggests "ghost-writing" Mr. Koeppel's Montana submissions was permissible, but as the *Ricotta* court cautioned ghost-writing allows attorneys to circumvent their Rule 11 obligations is inconsistent with an attorney's duty of candor and involves dishonesty, fraud, deceit or misrepresentation.  *Ricotta v. State of Cal.*, 4 F. Supp. 2d 961, 986 (S.D. Cal. 1998),

[4] Defendants ordered a transcript of the April 14, 2026 afternoon proceeding but do not have it at this time.  As a result, they are not certain whether this is at odds with statements made by Mr. Freshman when the court inquired about the documents reviewed.

PLEADING CONCERNING RECENT PRODUCTION AND ACTIVITY IN MONTANA MATTER

documents he initially identified as responsive, he produced only 670—leaving approximately 5,473 unproduced.  MacGregor Decl. ¶16. To be clear, most of the emails produced by Mr. Paatalo are communications *with Mr. Koeppel* and therefore should have been produced by Mr. Koeppel long ago.  One can only assume the 5,000 plus additional documents are also mostly communications with Mr. Koeppel and should have been produced by Mr. Koeppel *as recently as last night*.

On April 17, 2026, Mr. Freshman filed "Plaintiffs' Notice of Compliance by Nonparty William Paatalo and Response to April 16, 2026 Court Order ECF 142" and represented that Mr. Paatalo's production included "communications identified in Mr. Koeppels' privilege log, which were produced solely pursuant to court directive and under compulsion." The notice also represented that Mr. Freshman reviewed approximately 433 emails and asserted privilege as to 276.[5]

## III.    PROPOSED RESPONSE TO CONDUCT

### A.    Terminating Sanctions Are Appropriate[6]

Terminating sanctions are warranted where the integrity of a judicial proceeding or discovery process has been undermined in such a way "that there can never be assurance of proceeding on the true facts." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) ("Conn Gen"); see also *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). This includes when a party engages "a pattern of disregard for Court orders and deceptive litigation tactics that threaten to interfere with the rightful decision of a case." See *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1071 (N.D. Cal. 2006).

In determining to impose terminating sanctions, courts must consider the following five factors:(1) the public's interest in expeditious resolution of litigation;(2) the court's need to manage

---

[5] Defendants note that Docket 51 and the evidence submitted in support demonstrates a level of coordination between Plaintiffs' counsel, Plaintiffs and Mr. Paatalo with respect to his deposition and the most recent events likewise are at least circumstantial evidence of the same. Noticeably absent from any production made by Mr. Paatalo are emails with Mr. Freshman or Plaintiff about his role as a witness, the subpoena, his deposition, or the Montana action, though these would not be privileged.

[6] Defendants' arguments here build on those made in Dkt.51.

its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic sanctions. *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 348 (9th Cir. 1995)). Courts "need not make explicit findings regarding each of these factors" but "a finding of willfulness, fault, or bad faith is required." Id. (citation omitted). Courts must also seriously consider the availability of "less severe alternatives." Id. (citation omitted). All five factors weigh in favor of terminating sanctions.

### 1. Both Public's Interest And The Court's Docket Weigh In Favor Of Terminating Sanctions

The first and second factors weigh in favor of terminating sanctions here – both the public's interest in expeditious resolution of litigation and the court's need to manage its docket would be aided by ceasing to expend resources on a lawsuit that Plaintiffs have treated as a game. See *WeRide Corp. v. Kun Huan*, 2020 WL 1967209, *10 (N.D. Cal. April 24, 2020). Plaintiffs' misconduct has already overburdened the Court and with unnecessary disputes and delays. Defendants have been forced to litigate in two states to obtain documents Plaintiffs should have produced months ago and still, over 5,000 documents are missing.  The documents produced in fits and starts by Mr. Paatalo are mostly emails with Plaintiff. Despite the Court's directive on April 14, 2026, Mr. Koeppel continues to withhold production and endorses Mr. Paatalo's violation of court orders. Delaying trial to ensure compliance will burden the Court, which has already devoted considerable resources to reach the point of having a jury panel ready to report on April 21, 2026.

### 2. Plaintiffs' Actions Have Prejudiced Defendants

A party suffers prejudice when opposing party's actions "threaten to interfere with the rightful decision of the case." *Anheuser-Busch, Inc.*, 69 F.3d at 353–54. Plaintiffs' deliberate suppression of evidence – refusing to produce documents even after their scope objections were overruled and apparently coordinating with Mr. Paatalo to violate court-ordered production has obstructed Defendants' ability to present a comprehensive case at trial.  *Adriana Int'l Corp v. Thoren*, 913 F.2d 1406, 1412 (9th Cir. 1990) ("[A] failure to produce documents as ordered establishes sufficient prejudice"); *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)

("[R]epeated noncompliance with court orders to produce documents [and] constituted a clear interference with the plaintiffs' ability to prove the claims and to obtain a decision in the case.").They engaged in "gamesmanship" that prevented the deposition of Mr. Paatalo, one of the few witnesses they identified in their Rule 26 Disclosures, and the one person who has been advising the Koeppels from the beginning of their quixotic, decades long litigation.  These bad faith tactics benefitted Plaintiffs and prejudiced Defendants.

Defendants were deprived of the opportunity of taking depositions of Mr. Koeppel and Mr. Paatalo with the benefit of having a full and complete production of documents. For example, Mr. Paatalo produced two documents last night showing he and Mr. Koeppel agreed to fire Mr. Wilker on July 15, 2024 because he was raising questions about the efficacy of AMGAR. MacGregor Decl. ¶ 16, Exs. 11 & 12.  These are not only directly relevant to issues of breach and causation, but they are directly relevant to Defendants' statute of limitations defense (in other words, Plaintiffs lost trust and confidence in Defendants regarding AMGAR by July 15, 2023 and were required to file suit within a year under CCP 340.6).  Defendants had no idea these emails existed until last night, could not question Mr. Koeppel or Mr. Wilker about them, and were deprived of the opportunity to include statute of limitations instructions and verdict form questions in the pre-trial documents.  It is impossible to know what other bombshells are included in the over 5,000 documents withheld and how they might support the defense of these claims.[7]

### 3.   Monetary And Evidentiary Sanctions Provide Inadequate Remedy

Monetary sanctions will provide some measure of financial recompense and issue sanctions could possibly provide some mitigation of the damage done by Plaintiffs' suppression, but Defendants (and the Court) can never really know what evidence has been withheld. This proverbial "black box" of information that Plaintiffs have withheld from being discovered means that it is difficult to fully and fairly assess the remedies needed to address Plaintiffs malfeasance. Defendants have several suggestions below, but inasmuch as they are operating with asymmetrical

---

[7] Defendants note that they sought to depose Mr. Freshman and paralegal Kimberley Cromwell as percipient witnesses but were not permitted to do so. Withheld documents likely would have provided additional support for these depositions to have been permitted.

knowledge – Plaintiffs know full well what they are suppressing and Defendants do not – they have no confidence any of the lesser sanctions proposed will result in a fair adjudication of this matter. Plaintiffs' obstruction of discovery has resulted in preventing Defendants from obtaining relevant evidence that would have enabled them to present a full and accurate set of facts to the jury. The Plaintiffs will surely benefit from suppressing hurtful evidence and the Defendants' presentation at trial will be diminished. Terminating sanctions are appropriate when there is no assurance that the true facts will be presented at trial. See *Conn Gen*, supra, 482 F.3d at 1097. For this reason, the remedy for the suppression of relevant evidence is to issue terminating sanctions.

### B.    Issue And/Or Evidentiary Sanctions

Under 37(b)(2)(A)(1) courts may impose issue and evidentiary sanctions for spoliation and related misconduct, including adverse jury instructions, the preclusion of witnesses and testimony, and dismissal. E.g., *In re Napster, Inc. v. Copyright Litigation*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (internal quotations and citation omitted). A showing of prejudice is not required because it is "quite difficult for [parties] to demonstrate how they were harmed by evidence to which they do not have access." *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 564-65 (N.D. Cal. 2008).

Defendants propose the issue/evidentiary sanctions set forth below.

### 1.    Dismissal Of All Claims Premised On AMGAR

As explained above, only last night, Mr. Paatalo produced two email communications between him and Mr. Koeppel showing they agreed to fire Mr. Wilker from "handling negotiations" of AMGAR and agreed he should remain "temporarily" as counsel for the appeal. For variety, Mr. Paatalo called Mr. Wilker a "chickenshit" for expressing skepticism about the scheme. MacGregor Decl. ¶ 16, Ex. 11. These were withheld by Plaintiff and Mr. Paatalo until 5 days before trial because they are extremely hurtful to the AMGAR claims. The emails demonstrate AMGAR was doomed to fail – Plaintiff and Mr. Paatalo were already concerned Mr.

Schleining would not proceed with AMGAR.[8]  Even worse, they expose Mr. Koeppel's July 27, 2023 email supposedly memorializing a conversation with Mr. Schleining in which he relayed Mr. Wilker told him he would not be representing Mr. Koeppel in AMGAR as a fabrication. MacGregor Decl. ¶ 17, Ex. 13. Mr. Koeppel and Mr. Paatalo agreed Mr. Wilker would not represent Mr. Koeppel in AMGAR on July 15, 2023. MacGregor Decl. ¶ 16, Exs. 11 & 12. As important, they support a statute of limitations defense to the claims – Mr. Wilker clearly stopped performing legal services on AMGAR as of July 15, 2023 and was confined to preserving an appeal.  Under CCP 340.6, Plaintiffs should have filed their lawsuit against Mr. Wilker and Tonkon Torp within a year – by July 15, 2024, but filed on July 24, 2024.

There is no way of knowing what other critical emails regarding the AMGAR scheme and Mr. Koeppel's decision to blame Mr. Wilker have been withheld.  Dismissal of AMGAR claims is appropriate.

### 2.    Evidentiary Sanctions Related To Mr. Paatalo

Mr. Paatalo's repeated violation of court orders and failure to produce over 5,000 emails warrants severely curtailing his role as a witness in this matter.  Defendants propose that he be barred from testifying on behalf of Plaintiffs, be deemed unavailable as a witness to the extent necessary and allow Defendants to designate portions of his deposition to play in their case, should they choose to do so.  They also request that they be permitted to designate additional exhibits from the materials he has produced and that the court admit them without the need for authentication.

### 3.    Presentation Re Suppression Of Evidence And Adverse Inference

Defendants suggest the framework for an irrebuttable adverse inference set forth in *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 520–21 (C.D. Cal. 2022) is appropriate here:  1) Permit Defendants to present evidence to the jury about Plaintiffs and Paatalo's suppression of evidence; 2) given an adverse inference that the jury must presume irrefutably that the information contained in the suppressed evidence was unfavorable to Plaintiffs and, 3) that the

---

[8] Mr. Schleining is not a witness at trial, was not deposed and as a result, there is no evidence his decision not to participate in AMGAR was because Mr. Wilker allegedly told him he "would not represent Mr. Koeppel" in AMGAR.

PLEADING CONCERNING RECENT PRODUCTION AND ACTIVITY IN MONTANA MATTER

court must itself presume that the withheld evidence was unfavorable to Plaintiffs for purposes of pre-trial, trial or post-trial motions.

### C. Monetary Sanctions

Defendants seek leave to submit an additional pleading quantifying the fees and costs they have incurred due to the apparent coordinated efforts between Plaintiffs and Mr. Paatalo to suppress evidence.

## IV. CONCLUSION

Defendants will continue to prepare for trial and will also be prepared to address these issues with the court on Monday, April 20.

Dated: April 17, 2026.

LONG & LEVIT LLP

_____
JESSICA R. MACGREGOR
JOHN B. SULLIVAN
ABIGAIL W. HENDERSON
Attorneys for Defendants
STEVEN WILKER and TONKON TORP LLP

4935-6321-6803, v. 1

PLEADING CONCERNING RECENT PRODUCTION AND ACTIVITY IN MONTANA MATTER