JESSICA R. MACGREGOR, Bar No. 168777
JOHN B. SULLIVAN, Bar No. 238306
ABIGAIL W. HENDERSON, Bar No. 338358
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, California 94104
Telephone:    (415) 397-2222
Facsimile:    (415) 397-6392
Email:        jmacgregor@longlevit.com
              jsullivan@longlevit.com
              ahenderson@longlevit.com

Attorneys for Defendants
STEVEN WILKER and TONKON TORP LLP

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GARY MERLE KOEPPEL, individual and as Trustee for the KOEPPEL FAMILY TRUST; EMMA K. KOEPPEL, individual and as Trustee for the KOEPPEL FAMILY TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN WILKER; TONKON TORP, LLP, DOES 1-10, <br><br> Defendants. | Case No. 5:24-cv-06457-NW <br><br> **DECLARATION OF JESSICA R. MACGREGOR IN SUPPORT OF PLEADING CONCERNING RECENT PRODUCTION AND ACTIVITY IN MONTANA MATTER** <br><br> Action Filed:   July 25, 2024 |

I, Jessica R. MacGregor, declare as follows:

1.      I am counsel for Defendants.  If called as a witness in this matter I would and could testify competently to the information included below.

2.      Defendants served Mr. Paatalo with a subpoena to produce documents on October 23, 2025.

3.      On November 16, 2025, Plaintiffs emailed belated objections to Paatalo's document subpoena. A true and correct copy of Plaintiffs' objections to Paatalo's document subpoena is attached as Exhibit 1. Plaintiffs' objections were premised in part on *First Am. Title Ins. Co. v. Kohler,* 2007 WL 1231685, at 3 (N.D. Cal. Apr. 26, 2007) which purportedly stands for the

proposition that where a subpoena lacks valid proof of service, the 14-day period is not triggered, and objections served before the compliance date are timely. Putting aside the fact that there **was** a valid proof of service attached to the subpoena, I reviewed Westlaw and could not find the cited case.

4. Plaintiffs did not file a motion to quash Defendants' document request on Mr. Paatalo.

5. Defendants served Mr. Paatalo with a deposition subpoena on November 4, 2025, setting his deposition for December 1, 2025. On November 24, 2025, Plaintiffs' sent a letter objecting to the notice and subpoena advising: "Mr. Paatalo will not be appearing on December 1, 2025." A true and correct copy of this letter is attached at Exhibit 2.

6. Mr. Paatalo emailed me a Notice of Non-Appearance and Written Objections of Non-Party Witness William Paatalo on November 26, 2025. A true and correct copy of this correspondence is attached as Exhibit 3.

7. After receiving Mr. Paatalo's November 26, 2025 correspondence, I met and conferred with Mr. Paatalo and he agreed to appear for deposition on December 12 from noon to five. Based on this agreement, on December 2, 2025, Defendants served the Amended Notice of Taking Deposition of William Paatalo, setting Mr. Paatalo's deposition for December 12, 2025.

8. On December 8, 2025, Plaintiffs again served objections to Defendants' Amended Notice of Taking Deposition of William Paatalo again stating, "*the non-party witness will not appear.*" A true and correct copy of these Plaintiffs' Objections to Defendants' Amended Notice of Taking Deposition of William Paatalo is attached as Exhibit 4.

9. Less than an hour later, Mr. Paatalo emailed stating he understood that "the scope of any deposition of me is presently the subject of a joint discovery letter before Magistrate Judge Cousins" therefore, he would only appear if Defendants "[i]dentify the proposed areas of inquiry with reasonable particularity." He continued "To be clear, I am not refusing to testify. I will comply with any properly scoped deposition notice or any Court order defining the permissible topics of examination. Once the scope is clarified, I will work cooperatively to identify mutually available dates." A true and correct copy of Mr. Paatalo's December 8, 2025 correspondence is

DECLARATION OF JESSICA R. MACGREGOR IN SUPPORT OF PLEADING CONCERNING RECENT PRODUCTION AND ACTIVITY IN MONTANA MATTER

attached as Exhibit 5.

10. On December 22, I met and conferred with Plaintiffs' counsel to schedule Mr. Paatalo's deposition. Plaintiffs' counsel would not agree to call Mr. Paatalo or to engage in efforts to schedule his deposition. On December 30, 2025, I emailed Mr. Paatalo the Order on Updated Discovery Status Report per the court's instructions. Mr. Paatalo responded with dates he was available to be deposed but refused to appear unless there was a "clear definition of the proposed scope." More emails followed in which I detailed the period of time and litigations which were at issue. Ultimately, Mr. Paatalo refused to appear for a deposition unless it was limited to the period of Defendants' representation. I responded, reminding Mr. Paatalo the court had already ruled on the issue regarding the relevant time period. Mr. Paatalo stated he would seek appropriate relief in the District Court in Montana. A true and correct copy of this email exchange with Mr. Paatalo is attached as Exhibit 6.

11. Mr. Paatalo produced some documents to me on February 23, 2026. He represented to the Montana Court the production included 404 documents. I deposed Mr. Paatalo on February 24, 2026. A true and correct copy of excerpts from the deposition transcript are attached as Exhibit 7.

12. On April 1, 2026, Mr. Paatalo emailed me a production of an additional 111 responsive documents—not the 5,221 he previously identified. He attached at notice of compliance. He appeared to withhold them on the basis of attorney-client privilege. A true and correct copy of this email and its attachment is attached as Exhibit 8.

13. On April 2, 2026, Plaintiff filed a motion to intervene and stay the court ordered April 4, 2026 production.

14. Service of the motion first was made by Mr. Freshman's office on behalf of Mr. Koeppel. A true and correct copy of this email and its attachment is attached as Exhibit 9.

15. Then, Mr. Freshman's legal assistant served the motion from a separate email account on behalf of Mr. Koeppel pro se. A true and correct copy of this email and its attachment is attached as Exhibit 10.

16. On April 16, 2026 Mr. Paatalo produced 155 additional emails. A true and correct

DECLARATION OF JESSICA R. MACGREGOR IN SUPPORT OF PLEADING CONCERNING RECENT PRODUCTION AND ACTIVITY IN MONTANA MATTER

copy of two of the emails included in the April 16, 2026 production are attached hereto as Exhibit 11 and Exhibit 12. All told, it appears over 5,000 documents have been withheld.

17. Attached as Exhibit 13 is a true and correct copy of Trial Exhibit 56.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 17th day of April, 2026, at San Francisco, California.

_____
JESSICA R. MACGREGOR

4912-8472-5410, v. 1

DECLARATION OF JESSICA R. MACGREGOR IN SUPPORT OF PLEADING CONCERNING RECENT PRODUCTION AND ACTIVITY IN MONTANA MATTER

# Exhibit 1

Ronald H. Freshman, Esq. (SBN 225136)
**LAW OFFICES OF RONALD H. FRESHMAN**
3040 Skycrest Drive
Fallbrook, CA  92028
Telephone: (858) 756-8288
Facsimile: (858) 964-1728
Email: rhf@freshmanlaw.com

Attorney for Plaintiffs,
GARY MERLE KOEPPEL and EMMA K. KOEPPEL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GARY MERLE KOEPPEL, individual and as Trustee for the KOEPPEL FAMILY TRUST; <br> EMMA K. KOEPPEL, individual and as Trustee for the KOEPPEL FAMILY TRUST, <br><br>         Plaintiff, <br><br>    v. <br><br> STEVEN WILKER; TONKON TORP, LLP, DOES 1-10, <br>        Defendants. | **CASE NO.:**  5:24-cv-06457-NC <br><br> **PLAINTIFFS' OBJECTIONS TO THE DEFENDANTS' SUBPOENA TO NON-PARTY WILLIAM PAATALO** <br><br><br> **Action Filed:** July 25, 2024 |

Plaintiffs Gary and Emma Koeppel hereby serve their written objections under Fed. R. Civ. P. 45(d)(2)(B) to the subpoena issued to William Paatalo. The subpoena is facially overbroad, seeks irrelevant and privileged information, and is disproportionate to the needs of this malpractice action.

This lawsuit concerns Attorney Steven Wilker's conduct during his 2022–2023 representation in the 2021 state-court action, particularly his failure to address the January 2023 unauthorized MERS Assignment of Deed of Trust, Nationstar's subsequent Notice of Default, and his interference with Plaintiffs' July 2022 tender strategy.

**PLAINTIFFS' OBJECTIONS TO DEFENDANTS SUBPOENA TO  WILLIAM PAATALO**

**Law Offices of Ronald H. Freshman**
3040 Skycrest Drive
Fallbrook, CA 92028
Tel. (858) 756-8288

Requests aimed at historical loan-ownership disputes, securitization, MERS litigation from years prior, or the entire "servicing history" of the loan have no bearing on whether Wilker breached his duties in 2022–2023. These requests improperly attempt to re-litigate the Quiet Title Action, the MERS Action, and other long-resolved matters.

Accordingly, Plaintiffs object and request that William Paatalo withhold production pursuant to these objections.

## I. TIMELINESS OF PLAINTIFFS' OBJECTIONS

The subpoena contains no completed proof of service, no accompanying declaration, and no evidence establishing when service occurred.

Accordingly, for purposes of Rule 45(d)(2)(B), the only operative deadline is the compliance date stated on the subpoena — November 24, 2025 at 12:00 p.m. Courts hold that where a subpoena lacks valid proof of service, the 14-day period is not triggered, and objections served before the compliance date are timely. See, e.g.: *First Am. Title Ins. Co. v. Kohler,* 2007 WL 1231685, at 3 (N.D. Cal. Apr. 26, 2007) (objections timely where service date unclear or unsupported). Plaintiffs therefore assert these objections as timely.

## II. GENERAL OBJECTIONS

Plaintiffs object to the Subpoena on the following grounds, which apply to the subpoena as a whole and to each individual request.

### 1) Overbreadth and Undue Burden on a Non-Party

The subpoena demands all documents and all communications relating to multiple unrelated lawsuits, spanning nearly ten years, and reaching far outside the scope of any claim or defense in this action. This violates Fed. R. Civ. P. 45(d)(1), which requires the issuing party to avoid imposing undue burden or expense on a non-party.

### 2) Irrelevance / Circumvention of Party Discovery Limits

Many categories seek documents from:

**PLAINTIFFS' OBJECTIONS TO DEFENDANTS SUBPOENA TO WILLIAM PAATALO**

- the 2015 Quiet Title Action,
- the 2018 MERS Action,
- communications entirely unrelated to this litigation,
- and documents having no bearing on Plaintiffs' malpractice claims.

This violates Rule 26(b)(1) as irrelevant and disproportionate. Rule 45 cannot be used to "end-run" normal party discovery limits.

3) **Privileged and Protected Plaintiffs' Information**

- Numerous categories seek:
- confidential client-communications,
- communications with Plaintiffs,
- litigation files belonging to Plaintiffs from prior actions,
- declarations, statements, and materials implicating Plaintiffs' work product and attorney-client communications.

Plaintiffs assert objections under:

- Attorney-client privilege,
- Work product doctrine (Rule 26(b)(3)),
- Common-interest privilege,
- Privacy and confidentiality rights.

4) **Unrelated Case Files and Private Client Materials**

The subpoena demands entire historical case files from matters having nothing to do with the malpractice claims here. That is facially improper and protected under both privilege and privacy doctrines.

5) **Lack of Reasonable Time to Comply**

The subpoena seeks voluminous documents from a non-party within an unreasonable timeframe, violating Rule 45(d)(3)(A)(i).

6) **Defective, Vague, and Unlimited Requests**

Terms like "relating to," "all documents," and "all communications" are unbounded, vague, and fail to specify a subject matter limitation.

///

**Law Offices of Ronald H. Freshman**
3040 Skycrest Drive
Fallbrook, CA 92028
Tel. (858) 756-8288

## III.    SPECIFIC OBJECTIONS TO REQUESTS 1–14

Plaintiffs object to each and every request on the following grounds:

- Overbroad
- Seek irrelevant information from unrelated actions
- Seek entire historical case files and personal communications
- Implicate Plaintiffs' privileges and protected information
- Disproportionate to the needs of this action
- Impose undue burden on a non-party
- No date limitations
- Depending on the request, producing such material would invade:
- attorney-client communications with Plaintiffs,
- Plaintiffs' litigation files,
- work product from prior counsel and consultants,
- Plaintiffs' private and confidential information.

For these reasons, each request is improper and objected to in full.

## IV.    RESERVATION OF RIGHTS

Plaintiffs expressly reserve all rights to seek a protective order, move to quash, or otherwise challenge the subpoena under Rule 45(d)(3).

**LAW OFFICE OF RONALD H. FRESHMAN**

Date: November 16, 2025    /s/Ronald H. Freshman_____
Ronald H. Freshman, Attorney for Plaintiffs

PLAINTIFFS' OBJECTIONS TO DEFENDANTS SUBPOENA TO  WILLIAM PAATALO

Exhibit 2

LAW OFFICES OF RONALD H. FRESHMAN
**Ronald H. Freshman, Esq.**

3040 Skycrest Drive
Fallbrook, CA 92028
Office 858.756.8288
Fax 858.964.1728

November 24, 2025

**SENT BY ELECTRONIC EMAIL ONLY**
Jessica MacGregor
LONG & LEVIT LLP
65 California Street, Suite 500
San Francisco, CA 94104
jmacgregor@longlevit.com

RE:    Koeppel v. Wilker, et al., N.D. Cal. Case No. 5:24-cv-06457-NW
       Defendants' Notice of Taking Deposition of William Paatalo (served Nov. 4, 2025)

Dear Counsel

Plaintiffs hereby object to Defendants' November 4, 2025 Notice of Taking Deposition of William Paatalo. For the reasons stated below, the notice and subpoena are defective on their face, unenforceable under Rules 26 and 45, and impose an undue burden on a non-party. Mr. Paatalo will not be appearing on December 1, 2025.

**1. The subpoena is invalid because Defendants failed to tender the mandatory witness fee.**

Rule 45(b)(1) is explicit:

"Serving a subpoena requires delivering a copy to the named person and tendering

the fees for one day's attendance and the mileage allowed by law."

Zoom appearance does not eliminate the statutory attendance fee, which must be tendered at the moment of service.  The subpoena's Proof of Service (page 5) contains no indication of any fee tendered; it in fact shows $0.00 and is unsigned, undated, and blank as to how service occurred.

Failure to tender the witness fee at service renders the subpoena a nullity.  On this ground alone, the deposition cannot proceed.

**2. Defendants have provided no evidence of valid personal service on the witness.**

Rule 45 requires personal delivery of the subpoena to the witness.  The Proof of Service contains:

1

LAW OFFICES OF RONALD H. FRESHMAN
**Ronald H. Freshman, Esq.**

- no signature,

- no date,

- no method of delivery,

- no process-server name,

- and no statement of personal delivery.

Thus, there is no competent proof that the subpoena was ever personally served. A subpoena unsupported by proof of valid service is unenforceable.

**3. The notice identifies no subject matter whatsoever, rendering it overbroad, burdensome, and improper.**

Defendants' notice lists a date, time, and location, but no description of any topic or subject matter. A subpoena that contains no stated topics deprives Plaintiffs and the non-party witness of any ability to evaluate:

- relevance under Rule 26(b)(1);

- whether the examination will target collateral litigations Defendants have repeatedly tried to inject (MERS, QT, securitization, etc.);

- whether privilege or work product is implicated;

- whether a protective order is necessary; or

- whether undue burden exists.

A subject-less subpoena is the definition of overbreadth and violates Rule 45(d)(1) and (d)(3)(A)(iv).

**4. The notice is improper because the absence of any stated subject matter prevents Plaintiffs and the non-party witness from determining whether the proposed examination is limited to proper factual issues within Rule 26(b)(1).**

Mr. Paatalo is a percipient witness, but the notice provides no indication whatsoever of what factual issues Defendants intend to examine. Without any stated topics, Plaintiffs cannot determine whether the deposition will be confined to relevant factual matters or whether Defendants intend to range into collateral areas unrelated to the claims and defenses in this

2

LAW OFFICES OF RONALD H. FRESHMAN
**Ronald H. Freshman, Esq.**

action. The complete absence of subject matter renders the notice facially overbroad and unduly burdensome under Rule 45(d)(1) and (d)(3)(A)(iv).

**5. The subpoena imposes undue burden on a non-party, in violation of Rule 45(d)(1).**

Defendants have taken no steps to avoid undue burden, as required by the Rule. Instead, they have issued a blanket, topic-less subpoena directed to a non-party who has no factual involvement in the underlying Koeppel litigation.

Courts must quash subpoenas that impose undue burden on non-parties.

**6. Plaintiffs preserve all rights to a protective order under Rule 26(c), including Judge Cousins' joint-letter procedure.**

Because the subpoena is defective, and no meet-and-confer has been held regarding scope, subject matter, or burden, Plaintiffs cannot consent to the deposition. Plaintiffs will follow Judge Cousins' procedure if Defendants insist on pursuing this improper discovery.

**Conclusion**

For all the reasons above, the November 4 notice and subpoena are invalid and unenforceable. Mr. Paatalo will not appear on December 1, 2025.

Please confirm withdrawal of the notice or provide a corrected, compliant subpoena limited to proper factual subject matter tied to the claims and defenses actually pled in this action.

Sincerely,

Ronald H. Freshman
Attorney for Plaintiffs Gary & Emma Koeppel

3

# Exhibit 3

November 26, 2025

From:
WILLIAM PAATALO
476 LaBrie Drive
Whitefish, MT 59937
Bill.bpia@gmail.com
(406) 309 - 1812


To:
Tonkon Torp, LLP
Attn: Jessica MacGregory
65 California Street, Ste. 500
San Francisco, CA 94104
jmacgregor@longlevit.com


### Re: NOTICE OF NON-APPEARANCE

*Koeppel v. Wilker, et al.*, U.S. District Court, Northern District of California Case No. 5:24-cv-06457-NW
Subpoena Served: November 4, 2025
Deposition Date Noticed: December 1, 2025

To Counsel for Defendants:

I am a non-party witness who was personally served with a subpoena commanding my appearance for a deposition on December 1, 2025, in Kalispell, Montana. Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), I hereby serve the following written objections and provide formal notice that I will not appear on the date noticed.

## 1. Lack of Notice of Subject Matter; Facial Overbreadth

The subpoena was not accompanied by any notice identifying the subject matter or topics for the proposed deposition. As a non-party, I cannot determine the relevance, scope, burden, or privilege implications of the examination. The absence of defined subject areas renders the subpoena facially overbroad and unduly burdensome under Rule 45(d)(1), and warrants relief under Rule 45(d)(3)(A)(iv). No compliance is possible without proper notice.

## 2. Undue Burden on a Non-Party; Risk of Improper Inquiry

My factual involvement is limited to certain communications with Mr. Koeppel relating narrowly to the AMGAR/tender issue. The subpoena provides no assurance that examination will be restricted to those non-privileged factual matters. Without defined scope, there is a substantial and unjustifiable risk that questioning will extend into unrelated issues, including:

- prior litigations, investigations, or professional work,
- confidential or proprietary matters,
- privileged communications, and
- collateral subjects having no relevance to this action.

As a non-party, being required to prepare for and defend against undefined and potentially wide-ranging inquiry imposes an undue burden in violation of Rule 45(d)(1).

## 3. Attorney–Client Privilege and Conflict of Interest

I am a former client of Defendant Steven Wilker, and I currently maintain a pending legal malpractice action against him in Multnomah County, Oregon, Case No. 25CV37188, with summary-judgment oral argument scheduled for December 5, 2025. Any attempt to question me regarding:

- my prior representation by Mr. Wilker,
- communications with him, or
- matters relating to that dispute,

would implicate attorney–client privilege and protected material. The subpoena's lack of defined scope creates a substantial and unacceptable risk of intrusion into privileged and prejudicial areas.

## 4. Improper Attempt to Obtain Unretained Expert Testimony

To the extent the subpoena seeks opinions, analysis, or testimony arising from my professional work in other matters, Rule 45(d)(3)(B)(ii) prohibits compelling unretained expert testimony absent a showing of substantial need and reasonable compensation. No such showing has been made.

## 5. Insufficient Time for Compliance

Given the absence of scope and the proximity of the noticed deposition to my December 5, 2025 hearing in Oregon, the subpoena fails to allow reasonable time to evaluate, prepare for, or meaningfully protect privilege, in violation of Rule 45(d)(3)(A)(i).

## 6. Required Relief Must Be Sought in the District of Compliance

If Defendants intend to pursue enforcement, Rule 45(d)(3) and Rule 45(g) require that any motion be brought in the U.S. District Court for the **District of Montana**, the district where compliance is required—not the issuing court.

## NOTICE OF NON-APPEARANCE

For the reasons stated above, I will **not appear** for the deposition on December 1, 2025.

Respectfully,
/s/ William Paatalo
William Paatalo

# Exhibit 4

LAW OFFICES OF RONALD H. FRESHMAN

**Ronald H. Freshman, Esq.**

3040 Skycrest Drive
Fallbrook, CA 92028
Office 858.756.8288
Fax 858.964.1728

December 8, 2025

**SENT BY ELECTRONIC EMAIL ONLY**
Jessica MacGregor
LONG & LEVIT LLP
65 California Street, Suite 500
San Francisco, CA 94104
jmacgregor@longlevit.com

RE:    Koeppel v. Wilker, et al., N.D. Cal. Case No. 5:24-cv-06457-NW
       Defendants' Notice of Taking Deposition of William Paatalo (served Nov. 4, 2025)

Dear Counsel

Plaintiffs hereby object to Defendants' Amended Notice of Taking Deposition of William Paatalo. For the reasons stated below, the notice and subpoena remain facially overbroad under Rules 26 and 45 and impose an undue burden on a non-party. Accordingly, Plaintiffs do not consent to the deposition, and Mr. Paatalo will not appear on December 12, 2025.

**1. The Amended Notice still fails to identify subject matter   rendering it overbroad, burdensome, and improper.**

Defendants' notice lists a date, time, and location, but no description of any topic or subject matter.  A subpoena that contains no stated topics deprives Plaintiffs and the non-party witness of any ability to evaluate:

- relevance under Rule 26(b)(1);
- whether the examination will target collateral litigations Defendants have repeatedly tried to inject (MERS, QT, securitization, etc.);
- whether privilege or work product is implicated;
- whether a protective order is necessary; or
- whether undue burden exists.

1

A subject-less subpoena is the definition of overbreadth and violates Rule 45(d)(1) and (d)(3)(A)(iv).

**2. The notice is improper because the absence of any stated subject matter prevents Plaintiffs and the non-party witness from determining whether the proposed examination is limited to proper factual issues within Rule 26(b)(1).**

Mr. Paatalo is a percipient witness, but the notice provides no indication whatsoever of what factual issues Defendants intend to examine. Without any stated topics, Plaintiffs cannot determine whether the deposition will be confined to relevant factual matters or whether Defendants intend to range into collateral areas unrelated to the claims and defenses in this action. The complete absence of subject matter renders the notice facially overbroad and unduly burdensome under Rule 45(d)(1) and (d)(3)(A)(iv).

**3. The subpoena imposes undue burden on a non-party, in violation of Rule 45(d)(1).**

Bill Paatalo's factual knowledge is limited to (1) discrete AMGAR-related strategy communications and (2) his personal lay observations of Gary Koeppel's stress as a longtime friend. He has no involvement in, and no percipient knowledge of, the operative foreclosure, servicing, title, or damages transactions. Defendants' refusal to confine the subpoena to these narrow areas is what creates the undue burden under Rule 45.

Courts must quash subpoenas that impose undue burden on non-parties.

**4. Plaintiffs preserve all rights to a protective order under Rule 26(c), including Judge Cousins' joint-letter procedure.**

Although Defendants communicated directly with the non-party witness, they have never conducted a meet-and-confer with Plaintiffs' counsel regarding scope, subject matter, or proportionality of the deposition. The subpoena remains topic-less and overbroad, and no party-to-party meet-and-confer has occurred with Plaintiffs' counsel as required under Rule 26 and Judge Cousins' procedures. The scope of the non-party deposition is currently before Judge Cousins by joint discovery letter, with a hearing set for December 18, 2025. Until the Court resolves the permissible scope, Plaintiffs do not consent to any deposition, and the non-party witness will not appear.

LAW OFFICES OF RONALD H. FRESHMAN
**Ronald H. Freshman, Esq.**

**Conclusion**

For all the reasons above, the amended notice of deposition remains overbroad, unduly burdensome, and subject to protective limitation or quash. Mr. Paatalo will not appear on December 12, 2025.

Please confirm withdrawal of the notice or provide a corrected, compliant subpoena limited to proper factual subject matter tied to the claims and defenses actually pled in this action.

Sincerely,

Ronald H. Freshman

Attorney for Plaintiffs Gary & Emma Koeppel

3

# Exhibit 5

**Henderson, Abigail**

| | |
|---|---|
| **From:** | MacGregor, Jessica |
| **Sent:** | Monday, December 8, 2025 4:50 PM |
| **To:** | Henderson, Abigail |
| **Subject:** | FW: Koeppel et al. v. Wilker et al., Case No. 5:24-cv-06457-NW Amended Notice of Deposition of William Paatalo |

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Monday, December 8, 2025 4:48 PM
**To:** MacGregor, Jessica <jmacgregor@longlevit.com>
**Cc:** Ron Freshman <rhf@freshmanlaw.com>
**Subject:** Re: Koeppel et al. v. Wilker et al., Case No. 5:24-cv-06457-NW Amended Notice of Deposition of William Paatalo

Good Afternoon Ms. MacGregor:

I am in receipt of your Amended Notice of Taking Deposition, presently set for December 12, 2025. As you know, we met and conferred regarding your request; however, no subject matter, categories, or scope of examination were identified during that discussion, nor does the deposition notice define any topics.

After reviewing the governing rules and my obligations as a non-party witness, I must respectfully decline to appear on the noticed date unless and until the topics of examination are clearly and specifically defined. Being required to appear for an unbounded deposition presents undue burden and risk, and the Federal Rules require reasonable particularity in identifying the matters for examination when seeking discovery from a non-party.

I also understand that the scope of any deposition of me is presently the subject of a joint discovery letter before Magistrate Judge Cousins, with a hearing set for December 18, 2025. In light of that pending submission, you may either:

1. Identify the proposed areas of inquiry with reasonable particularity now, or
2. Await the Court's ruling on permissible limits.

To be clear, I am not refusing to testify. I will comply with any properly scoped deposition notice or any Court order defining the permissible topics of examination. Once the scope is clarified, I will work cooperatively to identify mutually available dates.

Please confirm how you intend to proceed.

Sincerely,
William Paatalo - Non-party Witness

1

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:
476 LaBrie Drive
Whitefish, MT 59937
Office: 1-(888)-582-0961 (Old - No longer in service)
     1-406-309-1812 (New)
bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:
https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:
https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."
Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law.  If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

# Exhibit 6

## Henderson, Abigail

| | |
|---|---|
| **From:** | Bill Paatalo <bill.bpia@gmail.com> |
| **Sent:** | Tuesday, January 6, 2026 11:01 AM |
| **To:** | MacGregor, Jessica |
| **Cc:** | Ronald Freshman; Kimberly Cromwell; Henderson, Abigail |
| **Subject:** | Re: Koeppel |

Ms. MacGregor,

I have reviewed your email.

At this point, we appear to have reached an impasse regarding scope and the appropriate limits applicable to a non-party witness. I do not agree with your characterization of the Court's order or of my prior communications, but I do not believe further debate by email will be productive.

Consistent with the Court's December 30, 2025 order, I will proceed with seeking appropriate relief in the District of Montana under Federal Rule of Civil Procedure 45(d)(3). Pending resolution of that process, I am not confirming a deposition date.

Regards,
William Paatalo

On Tue, Jan 6, 2026 at 11:53 AM MacGregor, Jessica <jmacgregor@longlevit.com> wrote:

Mr. Paatalo, the court has already ruled on the issue regarding the relevant time period, so your extreme temporal limitation is not proposed in good faith. Indeed, you previously refused to appear for your deposition until the scope issue was resolved by the court. You assured me you would appear when it was resolved. It has been resolved.

As you know, you are part of the reason, perhaps the primary reason, why the strategy to quiet title was implemented in the first place. Your name and documents you authored and received appear throughout the materials provided to my client when he joined a litigation in process and continued through his period of representation and beyond.

As Judge Cousins has cautioned you, you can be held in contempt for failing to appear for a deposition and refusing to produce relevant documents.

I hope you consider this history and confirm that you will appear for deposition on the 12th to be examined about your role in the various lawsuits that led to the one in which my clients represented Mr. Koeppel and your involvement in Mr. Koeppel's ongoing effort to allegedly mitigate his damages.

Best,


Jessica

---

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Tuesday, January 6, 2026 10:41 AM
**To:** MacGregor, Jessica <jmacgregor@longlevit.com>
**Cc:** Ronald Freshman <rhf@freshmanlaw.com>; Kimberly Cromwell <ksc@freshmanlaw.com>; Henderson, Abigail <ahenderson@longlevit.com>
**Subject:** Re: Koeppel


Ms. MacGregor,

I have reviewed your most recent email. In order to proceed by agreement and avoid motion practice, the following limitations are required for my deposition as a non-party witness:

1. **Temporal limitation**: My testimony will be limited to the period beginning with your clients' retention and involvement in Mr. Koeppel's matters. I will not provide testimony regarding investigative or advisory work performed prior to that period.
2. **Subject-matter limitation**: I will testify regarding factual work performed for or in connection with Mr. Koeppel during your clients' period of involvement. I will not testify regarding proprietary investigative methodologies, business models, or strategies (including the AMGAR strategy), except to acknowledge, at a high level, whether such work existed or was utilized, without discussion of methodology or implementation.
3. **Parallel-litigation protection**: I will not provide testimony regarding work performed, opinions formed, communications made, or materials prepared in connection with any other litigation in which I am involved as a party or expert, including ongoing state court matters.
4. **Bias inquiry**: I will answer limited questions confirming the existence of my malpractice action against your clients and that I seek damages in that action, but I will not testify regarding the substance, factual basis, or merits of that litigation.
5. **Document production**: I will produce non-privileged documents limited to the same temporal and subject-matter scope set forth above, and will log any documents withheld on the basis of privilege or work-product protection.

If Defendants agree to these limitations in writing, I will confirm availability for January 12 or January 13. If not, I will proceed with seeking appropriate relief in the District of Montana under Rule 45(d)(3).

Regards,
William Paatalo

2

On Tue, Jan 6, 2026 at 10:54 AM MacGregor, Jessica <jmacgregor@longlevit.com> wrote:

Mr. Paatalo,

You began working with Mr. Koeppel in 2010 or 2012.  He was unclear.  Perhaps you can clarify the beginning time.  That would be the start of the time period.  Based on the records I have, you have remained involved in all iterations of Mr. Koeppel's litigation, starting with the Quiet Title action, then the MERS litigation before Judge Davila, then the Monterey County action commenced by Mr. Freshman in which my clients became counsel of record, the AMGAR strategy, the appeal and subsequent matters related to the mortgage, including the period during which Margaret Foley and Charles Marshall represented Mr. Koeppel.  I believe you continue to provide assistance to Mr. Koeppel in his third state court action in which he is again represented by Mr. Freshman.  Thus, the time period spanning the matters enumerated above are the subject of the questioning and the documents we subpoenaed.  The length of the relevant time period is a product of the long-time relationship between you and Mr. Koeppel and your involvement in his effort to "find out who owned his loan" from the beginning to this day. In other words, I am not making the period longer out of some caprice or desire to burden you.  The relevant time period is fact driven.

Because I doubt you will be traveling to Montana to California for trial but you are listed by Mr. Koeppel as a witness, I do intend to ask you questions about your work as an investigator to put in context the work you have performed for Mr. Koeppel.  I do not intend to delve extensively into the work you have done in investigating mortgages etc, but I will ask you about the number of times you have worked with Mr. Freshman and Ms. Cromwell as well as Mr. West.

I will ask you under oath to confirm that you are suing Mr. Wilker and Tonkon Torp for legal malpractice and that you are seeking damages in that action.  These limited questions are relevant to bias.  I will not ask you any questions about the substance of the litigation, your claims, or the underlying facts.

With respect to the production, you are free to log documents which you believe are protected by attorney-client privilege or work product. Mr. Koeppel has testified you were NOT a retained expert in the lawsuit in which Mr. Wilker represented him, which eliminates a claim of privilege or work product. In addition, it is our position that the production to date demonstrates a waiver of any privilege that might exist.  Regardless, the fact that you may assert a privilege does not relieve you of the obligation to produce documents that are not privileged and/or to provide a log of materials you are withholding based on privilege.

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Tuesday, January 6, 2026 9:26 AM
**To:** MacGregor, Jessica <jmacgregor@longlevit.com>
**Cc:** Ronald Freshman <rhf@freshmanlaw.com>; Kimberly Cromwell <ksc@freshmanlaw.com>; Henderson, Abigail <ahenderson@longlevit.com>
**Subject:** Re: Koeppel

Ms. MacGregor,

Thank you for your response. I appreciate the clarification and your willingness to address these issues in writing.

Before I can confirm January 12 or January 13, there are still several points that remain insufficiently defined for a non-party deposition and that need to be addressed clearly and specifically:

1. **Temporal limits**: The reference to work performed "over the years" is open-ended. Please identify the relevant time period you contend is at issue for purposes of the deposition.
2. **Subject-matter limits**: Phrasing such as "the work that you have done," "those attorneys he has hired and/or consulted with," and "general questions about the work that you do" is overly broad. Please specify the subject matter areas you intend to cover and how they relate to claims or defenses in this action.
3. **Parallel-litigation protections**: While you state that you will not ask about the *substance* of my malpractice claim, that alone does not sufficiently address the risk of overlap. Please confirm in writing that questioning will exclude facts, opinions, communications, analyses, or work performed in connection with that malpractice litigation, including materials prepared in anticipation of it.
4. **Document production scope**: Your expectation of "responsive documents" remains undefined. Please identify the specific categories of documents sought, applicable date ranges, and acknowledge that privilege and work-product protections apply, consistent with Rule 45's requirements for non-party discovery.

Once these points are clearly defined in writing, I will review them in good faith and advise whether they adequately resolve my objections and permit the deposition to proceed by agreement. If we are unable to reach agreement on these issues, I will proceed with seeking appropriate relief in the District of Montana under Rule 45(d)(3).

Regards,
William Paatalo

On Tue, Jan 6, 2026 at 10:21 AM MacGregor, Jessica <jmacgregor@longlevit.com> wrote:

Mr. Paatalo, considering we must report to the court on the 9th, will you please let me know which of these dates we can lock in for your deposition.

Thank you,

Jessica

---

**From:** MacGregor, Jessica
**Sent:** Monday, January 5, 2026 9:19 AM
**To:** 'Bill Paatalo' <bill.bpia@gmail.com>
**Cc:** Ronald Freshman <rhf@freshmanlaw.com>; Kimberly Cromwell <ksc@freshmanlaw.com>; Henderson, Abigail <ahenderson@longlevit.com>
**Subject:** RE: Koeppel

Dear Mr. Paatalo,

Wither the 12th or 13th work on my schedule.  I will be flying on the 19th and cannot take your deposition on that day.

As you are aware, you have been working with Mr. Koeppel commencing in 2012 or possibly earlier (he could not pinpoint the exact start) with respect to the mortgage that has been at the heart of several litigated matters.  I intend to ask you about the work that you have done for him and with him and those attorneys he has hired and/or consulted with over the years.  There are many emails written by you and/or on which you are copied in the materials Mr. Koeppel produced. I will also need to ask you some general questions about the work that you.  I am not going to ask you questions about the substance of your malpractice claim against my clients.

Finally, I do expect you to produce responsive documents before your deposition.

Please let me know if you have a preference for the 12th or 13th.

Best,

Jessica

5

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Tuesday, December 30, 2025 4:14 PM
**To:** MacGregor, Jessica <jmacgregor@longlevit.com>
**Cc:** Ronald Freshman <rhf@freshmanlaw.com>; Kimberly Cromwell <ksc@freshmanlaw.com>; Henderson, Abigail <ahenderson@longlevit.com>
**Subject:** Re: Koeppel

Ms. MacGregor,

In light of the Court's December 30, 2025 order, and in an effort to cooperate on scheduling without waiving any objections, I am providing the following alternative dates on which I am available for a deposition: **January 12, January 13, or January 19, 2026**.

To avoid any misunderstanding or later mischaracterization, I do not believe a phone call is appropriate at this stage. Instead, I am requesting that any further conferral occur in writing.

Specifically, if Defendants wish to proceed without further motion practice, please set forth in writing:

1. A clear definition of the proposed scope of examination;
2. Reasonable limits on subject matter consistent with my status as a non-party witness; and
3. Explicit protections against inquiry that would overlap with or implicate the separate malpractice litigation in which I am involved against the same defendants and in which I am self-represented.

If those issues can be clearly defined and addressed in writing, I will review them in good faith and consider whether that satisfies my objections and permits the deposition to proceed by agreement.

If we are unable to reach agreement on those points, I will proceed with seeking appropriate relief in the District of Montana under Federal Rule of Civil Procedure 45(d)(3), as contemplated by the Court's order.

Regards,
William Paatalo

On Tue, Dec 30, 2025 at 4:55 PM MacGregor, Jessica <jmacgregor@longlevit.com> wrote:

Dear Mr. Paatalo,

Please see the attached order from the Court. I remain available to discuss with you on Friday dates on which you are available for deposition.

Best,


Jessica

---

**From:** MacGregor, Jessica <jmacgregor@longlevit.com>
**Sent:** Tuesday, December 30, 2025 2:39 PM
**To:** Bill Paatalo <bill.bpia@gmail.com>
**Cc:** Ronald Freshman <rhf@freshmanlaw.com>; Kimberly Cromwell <ksc@freshmanlaw.com>; Henderson, Abigail <ahenderson@longlevit.com>
**Subject:** Re: Koeppel


This is regrettable.


Get Outlook for iOS

---

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Tuesday, December 30, 2025 3:37:40 PM
**To:** MacGregor, Jessica <jmacgregor@longlevit.com>
**Cc:** Ronald Freshman <rhf@freshmanlaw.com>; Kimberly Cromwell <ksc@freshmanlaw.com>; Henderson, Abigail <ahenderson@longlevit.com>
**Subject:** Re: Koeppel


Ms. MacGregor,

At this point, I do not believe a further meet and confer is necessary or productive. I am a non-party witness, I am not represented by counsel, and the ongoing back-and-forth regarding deposition scope, jurisdiction, and scheduling has already consumed a substantial amount of my uncompensated time. I am not obligated to continue informal conferences in lieu of proper procedural resolution. My position has been clearly stated in writing. I am preserving my objections and awaiting appropriate resolution through the proper channels. Nothing further will be advanced by another call.

Regards,
William Paatalo

7

On Tue, Dec 30, 2025 at 3:22 PM MacGregor, Jessica <jmacgregor@longlevit.com> wrote:

Mr Paatalo, are you free to meet and confer with me on Friday morning. You agreed to appear and did not start raising "jurisdiction" issues until after the scope issue was resolved in favor of the position my clients have taken. I fail to see what legitimate jurisdiction issues exist.

As I said, I will accommodate scheduling issues. So please let me know when you are available.

Get Outlook for iOS

---

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Tuesday, December 30, 2025 9:06:40 AM
**To:** MacGregor, Jessica <jmacgregor@longlevit.com>
**Cc:** Ronald Freshman <rhf@freshmanlaw.com>; Kimberly Cromwell <ksc@freshmanlaw.com>; Henderson, Abigail <ahenderson@longlevit.com>
**Subject:** Re: Koeppel

Dear Ms. MacGregor,

I am writing to clarify the record in response to your email below.

First, I have not refused to testify, nor have I acted in bad faith. I have consistently stated—in writing—that I am willing to comply with a properly issued and enforceable deposition obligation. My position has been, and remains, that as an out-of-state, non-party witness, issues of jurisdiction, scope, and enforcement must be addressed through the appropriate procedural mechanism.

Second, my reference to my separate litigation against certain defendants was not an assertion that I may "disregard" a subpoena. It was raised to explain why clearly defined scope and proper jurisdictional safeguards are especially important here. That concern is neither unusual nor improper, particularly where a non-party witness is self-represented and involved in parallel litigation. I have never suggested that you personally represent parties in that matter, nor have I suggested that questioning would necessarily occur on those topics.

Third, while I understand Defendants' position regarding the Court's recent order, I do not agree that it conclusively resolves all jurisdictional and enforcement issues as to me personally as a non-party located outside California. As you acknowledge, any effort to compel my compliance would need to proceed through the appropriate court in Montana, where those issues can be addressed in an orderly manner.

Finally, with respect to scheduling, I am not available on January 5, 6, or 7. That statement is factual, not strategic. I am not declining to cooperate; I am preserving my objections while awaiting proper resolution of jurisdiction and enforcement.

Nothing in this correspondence is intended to obstruct discovery. It is intended solely to ensure that any deposition proceeds in a procedurally proper manner consistent with my status as a non-party witness.

Regards,
William Paatalo

On Tue, Dec 30, 2025 at 8:28 AM MacGregor, Jessica <jmacgregor@longlevit.com> wrote:

Dear Mr. Paatalo:

I hope you had a nice Christmas holiday.

On December 8, 2025, you wrote:

> To be clear, I am not refusing to testify. I will comply with any properly scoped deposition notice or any Court order defining the permissible topics of examination. Once the scope is clarified, I will work cooperatively to identify mutually available dates.

Now that the scope has been resolved and in a rather transparent coordination with Plaintiffs' counsel, you refuse to appear. You now also claim you are free to disregard a subpoena because you have sued my client in Oregon. As I explained in our zoom meet and confer, I do not represent my client in the Oregon litigation and will not be asking you any questions related to that matter. These positions and your conduct are in bad faith.

If I am forced to petition the court in Montana to compel your appearance I will seek sanctions. The fees and costs of obtaining your compliance will be significantly more than they already are.

Considering your previous promise, the order requiring your deposition and the amended subpoena, I do expect you to appear for deposition on January 5, 2026. If that date is not convenient, I am more than happy to coordinate another date and time with you.

Best,


Jessica

---

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Tuesday, December 23, 2025 2:32 PM
**To:** MacGregor, Jessica <jmacgregor@longlevit.com>
**Cc:** Ronald Freshman <rhf@freshmanlaw.com>; Kimberly Cromwell <ksc@freshmanlaw.com>; Henderson, Abigail <ahenderson@longlevit.com>
**Subject:** Re: Koeppel


Dear Ms. MacGregor,

I acknowledge receipt of your email and the Court's December 19, 2025 Order on Discovery Disputes that you attached .

At the outset, I need to clarify several points to ensure the record is accurate.

First, Ronald Freshman does not represent me. I am not a party to this action, nor am I represented by Plaintiff's counsel. Any rulings directed to Mr. Koeppel or his counsel should not be conflated with my independent status as a non-party witness.

Second, while the Order appears to address Defendants' motions relating to Mr. Koeppel's deposition, it does not meaningfully address or adjudicate the objections I personally raised as a non-party witness, including jurisdictional concerns and the scope and basis for compelling my testimony. To the extent Defendants contend the Order conclusively resolves those issues as to me, I do not agree with that characterization.

Third, I do not concede that the Northern District of California presently has personal jurisdiction over me for purposes of compelling a non-party deposition, document production, or sanctions. I reside outside California, and my position remains that any effort to compel my testimony or compliance over objection would need to proceed through the appropriate court in Montana, where I am located.

In addition, part of my objections—and a heightened concern for me—is that I am presently in active litigation in Multnomah County, Oregon against the same defendants in a legal malpractice matter, in which I am self-represented. Given that posture, the absence of clearly defined and limited topics of examination presents a substantial risk of prejudice, misuse, or spillover into issues that are directly at issue in my own pending case. That circumstance further underscores the need for clear scope, jurisdictional clarity, and appropriate procedural safeguards before any deposition proceeds.

Relatedly, I have not withdrawn my objections to the subpoena or to the lack of proper jurisdiction, and those objections have not been expressly ruled upon as to me. Until those issues are properly resolved, I do not consent to proceeding as though they have been decided.

10

With respect to scheduling, I am not available on January 5, 6, or 7, 2026. I am also not agreeing at this time to produce documents pursuant to the subpoena, as my objections to the subpoena likewise remain unresolved.

This email is not a refusal to cooperate. It is a notice that I do not agree with Defendants' interpretation of the Court's Order as automatically binding on me as a non-party, nor do I waive any jurisdictional or procedural objections. If Defendants believe further relief is warranted as to me personally, they may pursue it through the appropriate procedural and jurisdictional channels.

Please include this correspondence accurately in any report to the Court.

Regards,
William Paatalo

On Mon, Dec 22, 2025 at 11:34 AM MacGregor, Jessica <jmacgregor@longlevit.com> wrote:

Dear Bill:

The court resolved scope objections to your deposition and ordered a full scope deposition of you and Gary. Your deposition must be taken by January 7th. We need to report to the court by tomorrow regarding when the deposition will take place. I am out of town for the holidays and Ron has a trial starting on January 6th. For these reasons, I would like to take your deposition on January 5th starting at 10 a.m. California time. If you are not available on that date, please let me know if you are available on January 6th or 7th.

Because the Court has resolved the scope issues in favor of my clients, we also ask for a production of documents pursuant to the subpoena with which you were served. Can you provide responsive documents by January 2?

Thank you.

Jessica

Jessica R MacGregor  |  Partner



11

Cell: 415-305-4861   Direct: 415-438-4478
465 California Street, 5th Fl. San Francisco, CA 94104

CONFIDENTIALITY: This e-mail transmission may contain privileged and confidential material. If you are not the person or entity addressed, misusing the content or disclosing information contained herein may be a violation of federal or state law. An inadvertent transmission of this material to persons or business entities is not intended to waive, and does not waive, privileges and protections such as the attorney/client privilege or work product doctrine. California Evidence Code Section 952.

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:

476 LaBrie Drive

Whitefish, MT 59937

Office: 1-(888)-582-0961 (Old - No longer in service)

        1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:

https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:

https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."

Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law.  If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:

476 LaBrie Drive

Whitefish, MT 59937

Office: 1-(888)-582-0961 (Old - No longer in service)

        1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:

13

https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:

https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."

Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law.  If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:

476 LaBrie Drive

Whitefish, MT 59937

Office: 1-(888)-582-0961 (Old - No longer in service)

     1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com

14

To place an order, click here:

https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:

https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."

Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law.  If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:

476 LaBrie Drive

Whitefish, MT 59937

Office: 1-(888)-582-0961 (Old - No longer in service)

    1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com


To place an order, click here:

https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/


Client Administrative Notice Tracking Form:

https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/


"Nobody should be allowed to invent a debt and then enforce it."

Neil Garfield, Esq.


*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law.  If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*




--


Bill Paatalo
Oregon Private Investigator - PSID#49411


BP Investigative Agency, LLC
Mailing Address:

476 LaBrie Drive

Whitefish, MT 59937

Office: 1-(888)-582-0961 (Old - No longer in service)

16

1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:

https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:

https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."

Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law.  If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:

476 LaBrie Drive

17

Whitefish, MT 59937

Office: 1-(888)-582-0961 (Old - No longer in service)

    1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:

https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:

https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."

Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law.  If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:
476 LaBrie Drive
Whitefish, MT 59937
Office: 1-(888)-582-0961 (Old - No longer in service)
    1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:
https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:
https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."
Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law.  If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

19

# Exhibit 7

# Deposition Transcript

Case Number: 5:24-cv-06457-NW

Date: February 24, 2026

In the matter of:

# GARY MERLE KOEPPEL, et al. v STEVEN WILKER, et al.

# William Paatalo

Reported by:
Mauricio Mendez



Steno
Agency, Inc.

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(888) 707-8366
NV: Firm #108F

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

Case No. 5:24-cv-06457-NW


GARY MERLE KOEPPEL, individual and as
Trustee for the KOEPPEL FAMILY TRUST;
EMMA K. KOEPPEL, individual and as Trustee
for the KOEPPEL FAMILY TRUST,

     Plaintiffs,

     v.

STEVEN WILKER; TONKON TORP, LLP,
DOES 1-10,

     Defendants.
_____/



REMOTE DEPOSITION OF WILLIAM PAATALO via Zoom

commencing at 9:00 a.m. PT on Tuesday, February 24,

2026, before MAURICIO MENDEZ, Court Reporter and

Notary Public in and for the State of Florida at

Large.



STENO
Concierge@Steno.com
(888) 707-8366

APPEARANCES


FOR THE PLAINTIFFS:

             LAW OFFICES OF RONALD H. FRESHMAN
             BY:  RONALD H. FRESHMAN, ESQ.
             3040 SKYCREST DRIVE
             FALLBROOK, CALIFORNIA  92028
             (858) 756-8288
             ronfreshman@gmail.com

FOR DEFENDANTS STEVEN WILKER and TONKON TORP LLP

             LONG & LEVIT LLP
             BY:  JESSICA R. MACGREGOR, ESQ.
             465 CALIFORNIA STREET, SUITE 500
             SAN FRANCISCO, CALIFORNIA  94104
             (415) 397-2222
             jmacgregor@longlevit.com

ALSO PRESENT
XAVIER BUSCH, Videographer
JAHMYA GOODWIN, Videographer

WILLIAM PAATALO                                                JOB NO. 2445736
FEBRUARY 24, 2026

INDEX

---oOo---

                                                    PAGE

DIRECT EXAMINATION:   ATTORNEY MACGREGOR        6


---oOo---

EXHIBITS

Defendants' 138                                       9
Notice of Taking Deposition
3 pages

Defendants' 137                                      10
Court Order
9 pages

Defendants' 139                                      10
Nonparty Response and Objections of
William J. Paatalo to Subpoena for Documents
6 pages

Defendants' 109                                      25
Memorandum Decision
8 pages

Defendants' 43 (previously marked)        45
Spreadsheet
7 pages

Defendants' 8 (previously marked)         49
Email from Ms. Cromwell to Mr. Koeppel
and Mr. Freshman
3 pages

Defendants' 23 (previously marked)        52
Email from Gary Koeppel to Ron Freshman
on June 23, 2019

Defendants' 27 (previously marked)        58
March 13th, 2020 Order Granting
Plaintiffs' Motion for Judgment
on the Pleadings and Granting
Counter-Defendants' Motion to Dismiss
20 pages

Defendants' 29 (previously marked)            81
Plaintiffs' Verified Complaint
for Declaratory Relief
10 pages

Defendants' 108 (previously marked)           84
Plaintiffs' Verified Complaint
349 pages

Defendants' 56 A (previously marked)          89
Email from William Paatalo to Mr. Wilker,
Mr. Balmer, and Gary Koeppel.
3 pages

Defendants' 87 (previously marked)           113
June 13th, 2023 email between
Mr. Paatalo and Mr. Koeppel
2 pages

Defendants' 148                              140
June 1st, 2023 email from
Gary Koeppel to William Paatalo
2 pages

Defendants' 63 (previously marked)           151
Email Chain
4 pages

Defendants' 156                              163
July 13, 2023 email from
Mr. Paatalo to Mr. Koeppel
18 pages

Defendants' 112                              166
Complaint for Damages
57 pages

Defendants' 115                              169
October 4, 2017 email from
Mr. Paatalo to Mr. Kennedy
2 pages

Defendants' 116                              173
March 15, 2018 email from
Mr. Koeppel to Mr. Kennedy
3 pages

Defendants' 119                              175
Order Dismissing Action
8 pages

WILLIAM PAATALO                                                     JOB NO. 2445736
FEBRUARY 24, 2026

Defendants' 122                                    176
October 14, 2022 email from
Mr. Paatalo to Mr. Koeppel
2 pages

Defendants' 127                                    178
May 10, 2023 Email from
Mr. Paatalo to Mr. Balmer
2 pages

Defendants' 130                                    179
May 30, 2023 Email from Mr. Paatalo
to Mr. Wilker and Mr. Balmer and Gary Koeppel
3 pages

Defendants' 132                                    182
email from Mr. Paatalo to Mr. Wilker,
Mr. Balmer, copy to Mr. Koeppel
3 pages

Defendants' 158                                    184
August 8th, 2023 Email from Margaret
Foley to Mr. Koeppel and Mr. Paatalo
8 pages

Defendants' 159                                    188
August 15, 2023 Email from Mr. Paatalo
to Skechers1906
110 pages

Defendants' 161                                    190
September 2nd, 2023 Email from Mr. Paatalo
to Mr. Marshall and Ms. Foley and copied
to Mr. Koeppel.
15 pages

Defendants' 164                                    191
October 2nd, 2023 Email from Mr. Koeppel
to Ms. Foley, Mr. Marshall, and Mr. Paatalo
1 page

Defendants' 149                                    194
June 9th, 2023 Email from Mr. Paatalo
to Mr. Koeppel and Cathy Schleining
2 pages

Defendants' 160                                    197
August 17, 2023 Email from Mr. Koeppel
to Mr. Paatalo
1 page

Defendants' 170                                                    199
Complaint
35 pages
Defendants' 171                                                    202
Order Granting Summary Judgment
33 pages

Defendants' 169                                                    204
Paatalo v. J.P. Morgan Chase Decision
1 page

THE VIDEOGRAPHER:  Good morning.  We're on the record at 9:02 a.m. Pacific Time on February 24th, 2026 to begin the deposition of William John Paatalo in the matter of Gary Merle Koeppel et al versus Steven Wilker et al.

The venue of this case is United States District Court, Northern District of California San Jose Division. The case number is 5:24-cv-06457-NW.

This deposition is taking place via Zoom. The legal videographer is Xavier Busch here on behalf of Steno, whose business address is 315 West 9th Street Suite 807, Los Angeles, California 90015.

Would counsel please identify yourselves and state whom you represent?

MS. MACGREGOR:  I'm Jessica MacGregor.  I represent the Defendants, and I'm the noticing attorney.

MR. FRESHMAN:  I am Ron Freshman.  I represent the Plaintiffs in this matter.

THE VIDEOGRAPHER:  Thank you, counsel. Will the court reporter please identify yourself and swear in the witness?

THE COURT REPORTER:  Yes.  Good morning,

everyone.  My name is Mauricio Mendez also with Steno.  Before I swear in the witness, because this is a federal case, I need to read some language.

The attorneys appearing in this deposition acknowledge that I am not physically present in the deposition room, that I will be reporting on this deposition remotely, and that I will administer the oath to the witness remotely.  The parties and their counsel further agree that, while I am a licensed notary court reporter in Florida, the witness may be in a state where I am not licensed.  The parties stipulate that this deposition may be taken before me.

If any party does have an objection to this manner of reporting or anything stated above, please state so now.  Hearing none, we can proceed.

Mr. Paatalo, one second.  I'm sorry.  I don't want to say it wrong.  Raise your right hand.  Do you swear or affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  I do.

THE COURT REPORTER:  Thank you.  You can put your hand down.

Thereupon --

WILLIAM PAATALO

was called as a witness by the Defendants and, after having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. MACGREGOR:

Q.   Good morning, Mr. Paatalo.  How are you?

A.   Good.  Thank you.

MS. MACGREGOR:  Okay.  I'm going to mark Exhibit 138.

I'm sorry, this is not -- I have to do something here.

(Thereupon, a document was marked as Defendants' Exhibit 138 for identification.)

BY MS. MACGREGOR:

Q.   Can you see that okay?

A.   Very small.

Q.   Okay.  Can you see it now?

A.   Yes.

Q.   Okay.  What I have marked as Exhibit 138

him.  And that's when I began to assist in seeking verification, et cetera, and doing my retained work for him.  And, so, he was unaware that there were these certain issues.  And, as an investigator, we started to uncover -- I started to uncover anomalies such as that.

MS. MACGREGOR:  I'm going to move to strike as nonresponsive.

BY MS. MACGREGOR:

Q.   At the time that you began working with Mr. Koeppel, did he come to you and say words to this effect:  Mr. Paatalo, every month I am getting multiple requests from different servicers asking me to pay my mortgage, and I don't know who to pay my mortgage to?

A.   Not at the time he first reached out to me.

Q.   Thank you.  During the time that you have been working with Mr. Koeppel, has he ever come to you and said, Mr. Paatalo, I have before me two or more requests to make a mortgage payment from two or more different servicers, and I don't know who to pay?

A.   That's -- you're putting an exact question coming from Mr. Koeppel that it's impossible to

answer. First of all, what I can -- what I can tell you is, again, he didn't -- he wasn't aware of all the issues that I identified until I started digging in. And that's when he started asking questions about, you know, based on my findings and what I was explaining to him.

But now we're kind of getting into work product privilege here in terms of those discussions and what I produced and what was going on.

MS. MACGREGOR: I move to strike as nonresponsive.

Mr. Reporter, would you please read my question back.

(Thereupon, the requested portion of the record was read back by the reporter as above recorded.)

THE WITNESS: That's an exact quote that you're saying Gary Koeppel came to me, so, no, he didn't come to me and say that exact quote.

BY MS. MACGREGOR:

Q. My question was, did he say to you words to the effect of -- and I take it the answer is the same: No, he never said something like that to you during the time that you've been working with him, correct?

A.   I would say I'm going to take privilege on that one because now we're getting into the conversations of the -- of the work product.

Q.   For what period of time, Mr. Paatalo?

A.   I was investigating with him regularly for since probably February of 2012 when he first came to me, up until the point when we then retained Ron Freshman to handle the litigation for him.  So, that was roughly early 2015.  So, I have been investigating with him for probably that three-year period.

Q.   In the three-year period before Mr. Freshman was retained and there was no attorney involved, is it your understanding you're claiming work product?

A.   Yes, it was an ongoing investigation, trying to verify and determine who the proper creditor was, et cetera, within the course of my investigation.

Q.   Mr. Koeppel never came to you during -- from 2012 until today and said words to the effect to you, Mr. Paatalo, that there were two or more different servicers sending him monthly mortgage statements and he didn't know who to make his mortgage payment to; isn't that true?

Q.   At the very time he came to me, no.   It was uncovered after the fact when I was retained and began my investigation.

Q.   Mr. Paatalo, have you ever seen for any month that Mr. -- any month during the period that this loan has been in existence, and it's been in existence since 2005, two different servicers sending a request for payment for the same month to Mr. Koeppel ever?   Have you ever seen that?

A.   Again, you're -- now you're asking me to parse and get into pieces of my investigative work that would open up the box for me having to go in and explain and elaborate upon that question, okay? Therefore, it's impossible for me to go -- to go into my findings and the evidence and everything that I did over the course of those years without treading into the privileged territory.   So, there's --

Q.   -- you're so confused, Mr. Paatalo.   What are you -- but you're going to be a witness in this matter; isn't that true?

A.   I believe so, yes.

Q.   You're coming to California from Montana to testify on behalf of Mr. Koeppel; isn't that true?

MS. MACGREGOR:  Oh, my God.  Here we go again.

BY MS. MACGREGOR:

Q.  Okay.  So, let me make sure I understand this, Mr. Paatalo.

Are you willing to tell me about the work you did during the 13 months that Mr. Wilker worked on the matter?

A.  Well, I'm willing to tell you generally what I did and what the type of work was, but producing all of the documents, the work product, my research findings, my -- you know, everything that's in the case file that's protected under work product privilege, attorney-client privilege, yeah, I'm not producing that.

Q.  My question is this:  At trial you will be testifying about the period of time that Mr. Wilker represented Mr. Koeppel, correct?

A.  I believe so.

Q.  Okay.  And you are asserting the work product protection for any other period of time; is that correct?

A.  Well, it's -- again, you -- you'll see what I produced to you in the log.  That breaks down the time frames of -- of what I've researched and

where these things fall.

Unlike other cases I'm accustomed to, I prepare -- I prepare expert reports or declarations, things of that nature, that are intended to be used at trial.  And I know what I'm going to be attesting to because it's all disclosed.

Here, I'm a nonparty witness being called in here, and I -- I don't know the line of questioning.  Essentially, that's going to happen until I get on the stand.

Q.   You're aware that you attempted to limit the scope of your deposition to only the period in which Mr. Wilker represented Mr. Koeppel, correct?

A.   I tried.  Yeah, I was trying to get it limited down and the scope of it down.  Correct.

Q.   Okay.  And the Court in Montana denied your request, correct?

A.   Well, they said it was untimely, but they didn't -- you know, again, I don't want to get into the legal debate over that order.  We already did that at the beginning of the deposition.

Q.   So, you read the Court's order, and you're deciding that it doesn't say what it says; is that correct?

A.   No.

A.   Yes.

Q.   And MERS was not named as a defendant in that action, correct?

A.   Correct.

Q.   And a default quiet title judgment was obtained in that matter on behalf of the Koeppels, right?

A.   Correct.

Q.   And after the Koeppels obtained that quiet title judgment, they stopped making payments on their loan, correct?

A.   Yeah, I think they notified the servicer that they were still willing to pay if they could verify proper creditor status.  But until that time, they would be either putting it in escrow or something in lieu.

Q.   And did you tell Mr. Koeppel when he made the decision not to make payments on the mortgage that he risked a foreclosure?

A.   I don't believe I personally told Matt or I recall maybe being involved with a conversation with counsel over those types of things with Ron Freshman.

Q.   But that's, you know, quiet title judgment.  Well, let me -- let me back up.

But you recall hearing Mr. Koeppel being told that there was a risk that if he didn't make his payments, he would be subject to a foreclosure on his home?

A.   Oh, again, I would probably say that falls into attorney-client privilege with those discussions as he was still retained by Mr. Freshman at the time.

Q.   But you know that where a debtor -- a borrower stops making payments on a loan, they run the risk of a foreclosure, right?

A.   Generally speaking.

Q.   And, at the time, you testified at the quiet title default prove-up hearing, correct?

A.   Yes.

(Thereupon, a document was marked as Defendants' Exhibit 8 for identification.)

BY MS. MACGREGOR:

Q.   I put up on the screen -- this is -- this is marked as Exhibit 8 to Mr. Koeppel's deposition. And this is -- what I wanted to show you is this email from Ms. Cromwell to Mr. Koeppel and Mr. Freshman.  And here she says -- she's recapping a conversation that she had with Mr. Koeppel.  And

of business?

A.    Again, any discussions that I had with him was typically in -- involved with counsel, not necessarily outside of counsel.  I mean, even though we were close and became very good friends, typically everything that we would discuss, I would say you have to just rely on legal counsel and bounce this off Ron or Kimberly.

Q.    Did Mr. Koeppel ask you whether you -- you agreed or disagreed with the Court's opinion that MERS had authority to act under the deed of trust regardless of whether the original lender or successor or assign files bankruptcy or ceases operation?

A.    Again, we've had many, many, many, many discussions over the years.  And I -- he always asks me personally as a friend and as an investigator, in our friendship he always cc's me on most everything. He asks me personally, you know, what do I think of this?  He's fearful, he's elderly.  And, so, he trusts me and asks me a lot of times to give me -- tell me what you think as a personal friend as well.

Q.    Over the years that you worked with Mr. Koeppel he's been represented by Mr. Freshman in now four pieces of litigation related to his home

and the mortgage.

Did you ever say anything to Mr. Freshman or Ms. Cromwell words to the effect of Mr. Koeppel is old and he's scared and maybe it's time for him to stop litigating?

A. I mean, again, I've had conference calls with counsel that's privileged over the Koeppel matter over the years trying to strategize and those types of things on what was in his best interest. I've been a part of those discussions.

Q. Did you ever -- did you ever suggest to Mr. Freshman or Ms. Cromwell that, you know, Mr. Koeppel is an older gentleman and being involved in litigation that he's lost already several times, you know, at least once at this point in time, 2020, it's just too stressful for him, and he shouldn't, you know, it was a good effort, but, you know, he's got better things to do?

A. No, I've never -- I've never advocated for him to counsel in that regard, but I believe Ron and Kimberly have known Mr. Koeppel for quite a number of years as well. And they're acutely aware of the stress that this is putting on him at all times and his situation.

Q. Okay. So, Mr. Koeppel's stress was

business that RexMet is going to be engaged in?

A.   It's still being worked out, and we're in the development stage of the project.

Q.   And what is the intended service that RexMet will be offering?

A.   It's kind of -- as of right now, I'm going to say I'm going to take privilege on that one because I don't want to give away anything about what we intend to do and what we intend to launch and what we'll be doing.

Q.   And what's the general business area in which RexMet will be conducting business?

A.   It's a combination of consultation, real estate related.  And that's about as general as I can state.

Q.   Does it involve challenging mortgages?

A.   Again, I'm going to take privilege on that at this point.

Q.   When did you and Mr. Koeppel first begin to undertake this RexMet business?

A.   Mr. Koeppel had an entity called RexMet LLC that he worked on independently with a different partner for a number of years.  And we kind of took some of that project and converted it and merged it with a new concept.  And I think we started putting

looking into and creating that had some of the similar features to what we're doing now.

Q.   Did it involve mortgages?

A.   It's kind of the same sort of grad -- we're kind of graduating to another level a little bit with RexMet Holdings.  So, it incorporates some -- some key components that are somewhat the same.  So, I guess I'm going to say it all kind of falls under --

Q.   My question was, does it involve mortgages?

A.   Privileged.

Q.   So, you're refusing to answer my question?

A.   You're -- you're -- I'm not going to divulge what our business is because it has kind of an overlap in some ways to what we're currently doing.  And I don't want to divulge anything in terms of our project at this moment.  I can't do that even with my -- permission of my partner.  I can't give up his privilege in that as well.

Q.   What's privileged about it?

A.   Proprietary business trade secrets.

Q.   When did you start this White Knights business with Mr. Koeppel?

A.   We were discussing that somewhere maybe

Q.   Did you serve as a consultant for the previous RexMet entity that Mr. Koeppel had with Mr. Steele?

A.   Can you repeat the question?  Did I what?

MS. MACGREGOR:  And, Mr. Reporter, would you mind reading that back?

(Thereupon, the requested portion of the record was read back by the reporter as above recorded.)

THE WITNESS:  No.

BY MS. MACGREGOR:

Q.   Okay.  So, going back to this order, this March 13th, 2020 order that you obtained during the time that you worked with Mr. Koeppel, the Court in its decision with respect to the Koeppel's counterclaims found that Counter-Plaintiffs, that's the Koeppels, argued that MERS conspired to use deceptive -- MERS and the other Defendants conspired to use deceptive language in the deed of trust to promote the false illusion that MERS is a beneficiary of the deed of trust.

And have you ever had any conversations with Mr. Koeppel about whether the deed of trust used allegedly deceptive language to promote a false illusion that MERS is a beneficiary of the deed of

trust?

A.   Conversations would have been in consult with counsel and protected under privilege.

Q.   So, you're not answering my question?

A.   If I did have conversations, and we had many about MERS and its role, and I did lots of research, not necessarily legal research.  That was up to Kimberly.  But a lot of evidence and things that I was procuring and doing as part of my role, we would have lots of internal discussions on MERS and our strategy.  So, I would say that it's protected.

Q.   Okay.  So, just to be clear, you had conversations with Mr. Koeppel about MERS over this very lengthy period of time in which you've been working with him, correct?

A.   Correct.

Q.   And you're not going to answer my question based on an assertion of privilege; is that correct?

A.   You're asking a specific question regarding this statement in the -- in the order.  Did you have an opinion -- any conversation about this false -- you know, about MERS false illusion?  And all I can say is I can't dissect one specific conversation because there were many.  And, as I

said, those were all protected, I believe.

Q.   Right.  So, you had many conversations with Mr. Koeppel about MERS.  And I'm asking you if you ever had a conversation with him about whether MERS and the other entities he sued as Cross-Defendants in the MERS action used deceptive language in the deed of trust to promote the false illusion that MERS is a beneficiary of the deed of trust.

And you are not going to answer that question based on privilege, correct?

A.   Sounds correct.

MR. FRESHMAN:  And I would object because it's a -- it calls for a legal conclusion.

BY MS. MACGREGOR:

Q.   So, here the Koeppels argued that MERS is an electronic database that has no equitable pecuniary or legal interest in the debt.  And MERS is not a beneficiary, as defined by California law.

Did you ever have any conversations with Mr. Koeppel, beginning in 2012 up to today, in which you explained to him that MERS is an electronic database that has no equitable pecuniary or legal interest in the debt?

MR. FRESHMAN:  Same objection.  It calls

going to incur even more fees.

Did you -- did you have a discussion with him about maybe it wasn't a good idea to keep going?

A.    Well, no, but his --

MR. FRESHMAN:  Objection.  Asked and answered.

THE WITNESS:  I can say generally that Mr. Koeppel's frustration through all the litigation and all the money he spent and all the stress that he was put through, he still could not get the basic fundamental issue resolved that started this whole thing beginning in 2012.  And that is who is the creditor that I am owed -- is owed my payments each month, who owns this debt?  And he's been trying to determine that ever since day one. And that's his -- I can't say and tell him, and nor did I say, time to give up, Mr. Koeppel, because he wanted to find and he still wants to determine and figure out who the rightful party is.  That's all he's ever wanted.

BY MS. MACGREGOR:

Q.    Well, I know he wants to know who quote-unquote, "owns his debt," but to this point, we started in 2012.  It's now 2026.  He still has

litigation pending.  He's in his fourth lawsuit.

Has -- in this period of time has he ever been subject to two entities asking for a mortgage payment at the same time?

MR. FRESHMAN:  Objection.  Asked and answered.

THE WITNESS:  Correct.  And I've said -- I've said there's many of those similar issues that we've identified internally that I'm going to say is privileged.  He's still litigating in a matter right now to these issues.

BY MS. MACGREGOR:

Q.   Are you consulting on that matter?

A.   I'm not sure if I'm -- I'm a constant investigator providing research and everything and all of this litigation.  I don't know if I've officially been named in the other action, but I'm officially consulting and providing information.

(Thereupon, a document was marked as Defendants' Exhibit 108 for identification.)

BY MS. MACGREGOR:

Q.   Okay.  So, just to be clear, there's a fourth lawsuit that was filed by Mr. Freshman on behalf of Mr. Koeppel.  So, this was marked as

Garfield on a tender strategy, that sounded like it was something broader than just for Mr. Koeppel.

Was it something broader than something just for Mr. Koeppel?

A.   Well, we were considering he had already had done this strategy and 16 cases prior to.  I was never involved in any of that.  And he was -- we were in preliminary discussions of kind of maybe teaming up on a business venture to utilize this strategy with my contacts across the United States, et cetera, at that time.

Q.   Okay.  And did that happen?

A.   Well, no because his health deteriorated and he passed away shortly after.

Q.   After Mr. Garfield passed away, did you ever attempt to work with anybody else to put forth this tender strategy?

A.   You know, parts of it, I think I took, informed some of the key elements that he created and tried to add some of my own, but that's falling into the proprietary area of trade secret.

Q.   So, as I understand it, if I understand it, there's what Mr. Garfield had developed was something that was giving the acronym AMGAR.

What is AMGAR?

to execute the AMGAR strategy is my belief of what that implies, so -- and I think eventually it was -- Margaret Foley was the person that was going to use it and implement that at some point.

Q.   Okay.  So, Margaret Foley was ultimately engaged to assist with the implementation of an AMGAR strategy, correct?

A.   I don't know the exact retainer of what the scope was on that at that time, but she was aware of that -- of tender and all of that, I believe.

Q.   Did you have any discussions with Ms. Foley on the subject of tender?

A.   When he was -- when Gary was represented by Margaret, I was, again, consulting on that case, so that would be a privilege.

Q.   So, Mr. Koeppel's preference was to implement AMGAR.  And then he has these three options.  So, best case, find lender, implement AMGAR.  And, so, the lender is that person or that entity that's going to -- as you were explaining the process -- that is going to produce evidence that they have funds available to pay the amount owed on the loan; is that right?

A.   Yeah, generally, they're going to be the

highest payback.

What -- what was Mr. Koeppel referring to here when he said Ohio hedge?

A.   I had a business contact, a source that was out of Ohio, based out of Ohio, that could be an option for providing those funds, but he would charge a higher percentage of success fee or whatever to implement.

Q.   And what was the name of that Ohio hedge?

A.   That's part of my proprietary source for my contacts that I came to school.

Q.   Well, did you tell Mr. Koeppel who the Ohio hedge was?

A.   Yeah, he had the information.  I think I shared with him that I had a source or a backup source, potentially, that we were trying to find if -- in the event John didn't want to do it or couldn't do it.

Q.   And my question to you, Mr. Paatalo, is did you tell Mr. Koeppel the name of the Ohio hedge at this time, around this time, June 2023?

A.   I may have, and I probably did.

Q.   What's the name of the Ohio hedge, Mr. Paatalo?

A.   It's the investor source.  There, I'm

not -- it's privileged.

Q.   It's not privileged.  You told Mr. Koeppel -- Mr. Paatalo, this is during the time that Mr. Wilker represented Mr. Koeppel.  And this is about a tender strategy that Mr. Koeppel is saying Mr. Wilker somehow scuttled.  He sued Mr. Wilker. There's no more privilege with respect to this litigation at this point in time, in this June 2023 period of time.  And I'm giving you one more opportunity to answer my question without asserting privilege because there is none.

What is the name of the Ohio hedge?

A.   No, there is some -- and I'm going to take privilege because that's a trade secret to me.  If Gary Koeppel disclosed it, then there's nothing I can do about that.  But, for me, it's a trade secret.

Q.   Well, you gave that information to Mr. Koeppel as part of this tender strategy, did you not, Mr. Paatalo?

A.   I don't -- I may have -- I don't recall.

Q.   Did you have communications with the Ohio hedge on behalf of Mr. Koeppel around this time period?

A.   I had -- as part of my business strategy,

I had multiple conversations with my Ohio contact regarding --

Q.   Did you have communications with your Ohio hedge on behalf of Mr. Koeppel in this period, June of 2023, with respect to the tender strategy?

A.   Other than yes, I had contact with him to talk about potential cases, including Gary Koeppel's.

Q.   Okay.  And you didn't produce any of the documents, any of the emails or other communications you had with the Ohio hedge about that person or entity providing, being part of this tender strategy that was being strategized in this June 2023 time period, correct?

A.   I didn't -- I don't believe it's relatively to this case because they never got involved in being the tender provider, right?

Q.   Well, it's really not your place to say what's relevant or not relevant considering the Court's order.  In any event, you didn't produce any of those communications with the Ohio hedge that relate to the tender strategy that you were helping Mr. Koeppel with in this June 2023 time period, correct?

A.   Your trade secret privilege.  Correct.

willing to charge Mr. Koeppel?

A.   Again, I don't -- I don't remember the specific amount, but I can -- I think if I had to guess, it was somewhere between 15, 25 percent maybe; somewhere in there.

Q.   And when would Mr. Koeppel have to pay that amount?

A.   There was a time period.  I don't remember the exact time period, but after -- after the success was finalized; whatever that might be.

Q.   Was there some fee that would be charged just to get the letter of credit?

A.   There was like an administrative kind of fee that -- as I was trying to build the business model with various -- you know, I didn't have just one investor but potentially other investors to offer those funds for periods of time while the tender was offered, was on the table.

So, again, I'm kind of getting into too much of the specifics of the business model that it's touching into privilege area and telling you how that works, so I'm not really comfortable disclosing the trade secrets.

Q.   Well, I'm just trying to understand how -- what information you gave to Mr. Koeppel so he could

he's always been a very spry, energetic person.  But I can -- I could see -- I've just been a firsthand witness of watching the toll that this has taken on him over the years and how it's drained his resources and everything else.  It's been really sad.

Q.   Have you ever suggested that he just stop fighting?

A.   We've covered that several times in this deposition.  I've asked -- you've asked and answered that.

Q.   All right.  As you sit here today, can you recall any specific conversations that you had with Mr. Wilker about any aspect of the work that he was doing on behalf of Mr. Koeppel in the third litigation, the Koeppel v. Central Pacific Mortgage matter that you haven't already told me about?

A.   No, I didn't have any direct conversations that I recall strategizing or anything.  It's all cc'd, and everything I think we've covered.

MS. MACGREGOR:  Okay.  Well, I'm not going to conclude your deposition because you've asserted the privilege and refused to answer so many of my questions.  And I don't have a full and complete set of your documents, but I thank

you very much for your time today, Mr. Paatalo.
I guess I'll see you in California sometime
soon.

THE WITNESS:  All right.  Thank you.

THE VIDEOGRAPHER:  Good.  There's no
further questions or statements, court
reporter?

THE COURT REPORTER:  Yes.  I'm sorry.
Yeah.  No, not for the moment.  Just the
previous videographer asked me if you, you
know, you can ask all the questions.  You can
ask all the questions at the end.

THE VIDEOGRAPHER:  Attorney McGregor, just
to confirm, you would like a standard copy of
the transcript as well as a standard video
order?

MS. MACGREGOR:  I would, but I did ask
earlier if I could get this on a rush basis and
get a rough as well.

THE VIDEOGRAPHER:  Would you like that for
the -- I know for the transcript.  Would you
like that for the video as well?

MS. MACGREGOR:  Yes, please.

THE VIDEOGRAPHER:  And what time would you
like it by?

MS. MACGREGOR:  Is it possible to get it -- I mean, do we have to do it from the record?

THE VIDEOGRAPHER:  One moment -- if we can, please.

MS. MACGREGOR:  If it's possible to get it by next Monday, the 2nd, that would be ideal.

THE VIDEOGRAPHER:  Any specific time that day?

MS. MACGREGOR:  I would just say by end of day, but I could really use a rough much sooner than that.

THE VIDEOGRAPHER:  Okay.  Attorney Freshman, would you like to purchase a copy of the transcript?

MR. FRESHMAN:  Good.  What's your normal turnaround.

THE VIDEOGRAPHER:  Reporter Mendez?

THE COURT REPORTER:  Oh, it's usually, I believe, 10 business days.

MR. FRESHMAN:  Okay.  And that gets us --

THE VIDEOGRAPHER:  I'm sorry?

MR. FRESHMAN:  I'm sorry.  I'm just trying to think through the calendar.

THE WITNESS:  Did you need me for anything

else?

THE VIDEOGRAPHER: Yes, if you could hold just for a little bit before we do the final read-off.

MR. FRESHMAN: Yeah, that -- that means you would get it to me by the 10th -- get it -- we'd get it by the 10th of March.

THE COURT REPORTER: I guess so. I haven't seen the calendar.

THE VIDEOGRAPHER: Yes, it would be the 10th of March.

And then would you like to purchase a video order?

MR. FRESHMAN: No, thank you.

THE VIDEOGRAPHER: You said no?

MR. FRESHMAN: Correct.

THE VIDEOGRAPHER: Thank you. If there are no further questions or statements, this concludes volume one of the deposition of William John Paatalo for Gary Merle Koeppel et al versus Steven Wilker et al.

We are now off the record. The time is 4:33 p.m. Pacific Time.

(Proceedings concluded at 4:33 p.m. Pacific Time.)

CERTIFICATE OF REPORTER OATH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

I, MAURICIO MENDEZ, Court Reporter,

the undersigned authority certify that

WILLIAM PAATALO, named herein, appeared

remotely before me and was duly sworn on the 24TH

day of FEBRUARY, 2026.

WITNESS my hand and official seal this

2ND day of MARCH, 2026.

_____

MAURICIO MENDEZ
Court Reporter

# Exhibit 8

**Henderson, Abigail**

| | |
|---|---|
| **From:** | Bill Paatalo <bill.bpia@gmail.com> |
| **Sent:** | Wednesday, April 1, 2026 12:15 PM |
| **To:** | MacGregor, Jessica; goboose@garlington.com; Ron Freshman |
| **Subject:** | Supplemental Production and Notice of Compliance |
| **Attachments:** | Notice of Compliance.pdf |

Ms. McGregor,

Pursuant to the Court's March 25, 2026 Order, please find the link below to an additional supplemental production consisting of **111 responsive documents** identified after further review. These materials have been exported in **.mbox format** due to file size and are available for download through the Google Drive link below:

This supplemental production follows my earlier production of responsive materials and reflects my continued good-faith effort to comply with the Court's Order. A **Notice of Compliance** reflecting this supplemental production is being filed with the Court today.

Because of the size of the archive, the documents are being provided through the Google Drive link for download. Access has been enabled for the parties for the limited purpose of retrieving the produced materials. Please note that these materials are produced in response to a federal subpoena and **remain confidential**. They may be used solely for purposes of the above-referenced litigation and remain subject to the protections previously asserted, including Federal Rule of Evidence 502 regarding inadvertent disclosure.

Please confirm that you are able to access and download the file successfully.

Sincerely,

William J. Paatalo

_takeout-20260331T225207Z-3-001.zip

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:
476 LaBrie Drive

1

Whitefish, MT 59937
Office: 1-(888)-582-0961 (Old - No longer in service)
        1-406-309-1812 (New)
bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:
https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:
https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."
Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law.  If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

William J. Paatalo –
Non-Party Witness
476 LaBrie Drive
Whitefish, MT 59937
(406) 309-1812
Bill.bpia@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| In re Subpoena to: | Misc. Case No. 9:26-MC-00001-KLD |
| WILLIAM PAATALO, | **NON-PARTY WILLIAM PAATALO'S NOTICE OF COMPLIANCE WITH COURT'S MARCH 25, 2026 ORDER** |
| Non-Party. | |

### I.   NOTICE

Non-Party William Paatalo, Pro Per, hereby provides notice to the Court that he has

complied in good faith with the Court's March 25, 2026 Order granting Defendants' motion

to compel.

1

## II. COMPLIANCE AND SUPPLEMENTAL PRODUCTION

In response to the subpoena and the Court's Order, Mr. Paatalo conducted a comprehensive and diligent review of his records, including approximately 6,000+ emails spanning from 2012 to the present.

Following that review:

1. Mr. Paatalo previously produced 404 non-privileged, responsive documents;

2. In further compliance with the Court's Order, Mr. Paatalo has produced an additional 111 responsive documents;

3. Accordingly, Mr. Paatalo has now produced a total of 515 responsive documents identified after a reasonable and diligent search;

4. In producing these materials, Mr. Paatalo made a good-faith effort to eliminate duplicates and clearly non-responsive materials and to ensure that all responsive documents within his possession, custody, or control have been produced.

## III. RESPONSIVENESS AND SCOPE

Mr. Paatalo is a non-party proceeding without counsel and made a good-faith effort to respond to a broad subpoena seeking materials spanning over 14-years.

Upon further review, and in light of Federal Rule of Civil Procedure 26(b)(1), Mr. Paatalo applied a reasonable interpretation of "responsive" materials, limiting production to documents relevant to the claims and defenses in the underlying action, including those relating to the quiet title action, MERS-related litigation, and related matters.

Applying that standard, Mr. Paatalo has produced all documents reasonably determined to be responsive following a thorough and repeated review of his records.

## IV. PRIVILEGE AND REMAINING MATERIALS

In light of the Court's Order, Mr. Paatalo has produced all responsive materials within his possession, custody, or control that he is able to produce.

To the extent any materials have not been produced, such materials consist of communications that are subject to attorney-client privilege belonging to Plaintiff Gary Koeppel and involve communications with or including his counsel.

Mr. Paatalo does not rely upon any personal privilege to withhold responsive materials. Any remaining withheld materials consist solely of communications subject to attorney-client privilege belonging to Plaintiff Gary Koeppel. However, Mr. Paatalo is not the holder of, and cannot waive, attorney-client privilege belonging to Mr. Koeppel. The Court's Order does not expressly address or adjudicate the waiver of third-party privilege, and Mr. Paatalo has taken care to avoid unauthorized disclosure of such materials.

## V. GOOD FAITH COMPLIANCE

Mr. Paatalo conducted a comprehensive and repeated review of his records, including approximately 6,000+ emails spanning more than fourteen years, and produced all documents reasonably determined to be responsive following a diligent search and supplemental production.

## VI. CONCLUSION

Mr. Paatalo respectfully submits that he has complied with the Court's March 25, 2026 Order and his obligations under Federal Rule of Civil Procedure 45.

After conducting a reasonable and diligent search of the records within his possession, custody, and control, Mr. Paatalo has produced all non-privileged documents reasonably determined to be responsive to the subpoena as interpreted in light of the Court's Order and Federal Rule of Civil Procedure 26(b)(1).

To the extent any dispute remains, it concerns legal issues relating to third-party privilege—not a failure to comply with the Court's Order.


Date: April 1, 2026


_____

William Paatalo, Non-Party in pro per

## PROOF OF SERVICE

I am employed in the County of Flathead, State of Montana. I am over the age of 18 and not a party to the within action; my business address is 476 Labrie Drive, Whitefish, Montana 59937. On the date indicated below, I served the within

### NON-PARTY WILLIAM PAATALO'S NOTICE OF COMPLIANCE WITH COURT'S MARCH 25, 2026 ORDER

on the interested parties in said action by emailing addressed as follows:

| | |
|---|---|
| Jessica MacGregor, Esq. (SBN 168777) jmacgregor@longlevit.com **LONG & LEVIT, LLP** 465 California Street, Suite 500 San Francisco, CA 94104 Telephone: (415) 397-2222 Facsimile: (415) 397-6392 *Attorneys for Defendant (Pro Hac Vice): Steven Wilker and Tonkon Torp, LLP* **(US MAIL and ELECTRONIC)** | Gunnar O. Boose , Esq. goboose@garlington.com **GARLINGTON, LOHN & ROBINSON, PLLP** 350 Ryman Street • P. O. Box 7909 Missoula, MT 59807-7909 Phone (406) 523-2500 Fax (406) 523-2595 *Attorneys for Defendant: Steven Wilker and Tonkon Torp, LLP* **(ELECTRONIC ONLY)** |
| Ronald H. Freshman, Esq. (SBN 225136) Rhf@freshmanlaw.com **LAW OFFICES OF RONALD H. FRESHMAN** 3040 Skycrest Drive Fallbrook, California 92028 Tel. (858) 756-8288 Fax (858)-964-1728 *Attorney for Plaintiff: Gary M. Koeppel and Emma K. Koeppel* **(ELECTRONIC ONLY)** | |

 X  **BY ELECTRONIC SERVICE** - Pursuant to Federal Rules of Civil Procedure, ECF Filing  System,, and/or by agreement of the parties, I caused a PDF version of said document(s) to be served by electronic mail to the parties listed below by using their email addresses sent either directly by the undersigned OR via a third-party electronic service provider.

__ **BY US MAIL** - I am "readily familiar" with the practice of collection and processing correspondence for mailing. Under that practice, it would be deposited in a box or other facility regularly maintained by the United States Postal Service.

 X  **STATE** - I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Dated: April 1, 2026

_____

William Paatalo

5

# Exhibit 9

**Henderson, Abigail**

| | |
|---|---|
| **From:** | a.f@freshmanlaw.com |
| **Sent:** | Thursday, April 2, 2026 1:41 PM |
| **To:** | MacGregor, Jessica; goboose@garlington.com |
| **Cc:** | Ronald Freshman; Kimberly Cromwell; Djf; Henderson, Abigail |
| **Subject:** | Koeppel, et al. v. Wilker, et al.: In Re Bill Paatalo - Montana |
| **Attachments:** | 1_Koeppel_Motion to Intervene_FINAL.pdf; 2_Koeppel_Motion to Intervene_Decl of Koeppel_Final.pdf |

Good Afternoon Counsel;

On behalf of and at the request of Mr. Freshman, please find attached an Emergency Motion to Intervene and Stay Enforcement of Subpoena Pending Privilege Determination and Declaration in Support.

Should you have any questions, or have trouble opening the attached, please respond to this email.

Thank you,
Alexis Fisher
Paralegal
925.207.9535
Law Offices of Ronald H. Freshman

PLEASE NOTE:  The information contained in this email message is intended only for the personal and confidential use of the recipient(s). This message may be an attorney-client communication and or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error please notify us immediately by email and delete the original message.

# Exhibit 10

## Henderson, Abigail

| | |
|---|---|
| **From:** | Alexis Fisher <abf@plms2011.com> |
| **Sent:** | Thursday, April 2, 2026 1:56 PM |
| **To:** | goboose@garlington.com; MacGregor, Jessica |
| **Cc:** | Henderson, Abigail; rhf@freshmanlaw.com; Kimberly Cromwell; Dakotah Flucke |
| **Subject:** | In Re William Paatalo - Montana District Court |
| **Attachments:** | 1_Koeppel_Motion to Intervene_FINAL.pdf; 2_Koeppel_Motion to Intervene_Decl of Koeppel_Final.pdf |

Good Afternoon Counsel;

On behalf of and at the request of Mr. Koeppel, please find attached Emergency Motion to Intervene and Stay Enforcement of Subpoena Pending Privilege Determination and Declaration in Support.

Should you have any questions, or have trouble opening the attached, please respond to this email.

Thank you,

Alexis Fisher

Contract Paralegal

**PARALEGAL MASTER SUPPORT 2011**

C: 925.207.9535

E: abf@plms2011.com

W: www.plms2011.net

**PLEASE NOTE**: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product as work performed under my contract for paralegal support to the attorney; and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify me immediately by e-mail, and delete the original message.

# Exhibit 11

PRODUCED UNDER COMPULSION - SUBJECT TO OBJECTION - NO WAIVER OF PRIVILEGE OR PROTECTION

**Date : 7/14/2023 7:55:35 PM**
**From : "Gary Koeppel"**
**To : "Paatalo Bill"**
**Subject : Re: Wilker**
Bill,
Please call anytime convent so we can discuss further.  We cannot afford to let him sabotage the strategy between now and his exit date.  We will need to monitor and control everything he does..
Gary


On Jul 14, 2023, at 7:45 PM, Bill Paatalo <bill.bpia@gmail.com> wrote:

Hi Gary,

Based on Steven's last email, I think I now know why he's acting like the nervous skeptic and likely needs to be removed. He's an establishment attorney and fears retaliatory action from the dark side like they retaliated against my former attorney Russ Baldwin, and all other affective consumer / foreclosure defense attorneys. He knows this is an excellent strategy but worries he will be ostracized by the "good ol boy network" and big $$$ that would cause problems with his reputation, etc. In other words, he's a gutless chickenshit!

I'm lining up some fearless types now and we can discuss. No rush, but I'm now convinced Wilker has to be let go. He can remain temporarily as appeal counsel of record, but not to handle negotiations. This is what my gut is telling me as of this moment.

All is good!

Bill

--


Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:
476 LaBrie Drive
Whitefish, MT 59937
Office: 1-(888)-582-0961
bill.bpia@gmail.com


www.bpinvestigativeagency.com

*TO PLACE AN ORDER CLICK ONE OF THE FOLLOWING LINKS*:

**New - Preliminary Analysis & Zoom Conference - $595.00:**
https://bpia.wufoo.com/forms/r1hkczdp1ge2xtc/

**Full Investigation With Expert Report (Add Declaration / Affidavit format): ($1,695.00 or $1,995.00):**
https://bpia.wufoo.com/forms/qdwjs4i08my1rt/


The information contained in this electronic mail, and any attachments to
this electronic mail, are intended only for the person or entity to whom
they are addressed and may contain confidential and/or privileged
information. Any review, retransmission, dissemination or other use of,
or
taking of any action in reliance upon this information by persons or
entities other than the intended recipient may be prohibited by state or
federal law. If you received this electronic mail in error, please contact
the sender by reply email or at 1-888-582-0961, and delete the material
from
any computer or server where electronic mail is stored. Thank you.

# Exhibit 12

PRODUCED UNDER COMPULSION — SUBJECT TO OBJECTION — NO WAIVER OF PRIVILEGE OR PROTECTION

**Date : 7/15/2023 8:28:40 AM**
**From : "Gary Koeppel"**
**To : "Paatalo Bill"**
**Subject : Questions**
Bill,

I awoke during the night with the following questions,
provoked by Wilker's email yesterday:

1.  Should the Letter of Intent be retitled "Purchase Agreement"
or something else?

2.  Is his question about the Estoppel letter valid?

3.  Should you write the letter for him?

4.  Should I fire him "mo' soonah rather than mo' latch"?

5.  If we brought John into this issue, as he recommended
Wilker, could he help "manage" him to do/say/write the right
things?

Gary

PRODUCED UNDER COMPULSION — SUBJECT TO OBJECTION — NO WAIVER OF PRIVILEGE OR PROTECTION

Case 5:24-cv-06457-NW    Document 145-1    Filed 04/17/26    Page 100 of 102

# Exhibit 13

**Koeppel-00098**

Case 5:24-cv-06457-NW   Document 145-1   Filed 04/17/26   Page 102 of 102

| | |
|---|---|
| Subject | **DRAFT---NOT SENT --- Notice to Attorney Steven Wilker** |
| From | Gary Koeppel <gary@coastgalleries.com> |
| To | Gary Koeppel <gary@coastgalleries.com> |
| Date | 2023-07-27 12:50 PM |



# DRAFT—NOT SENT ASD OF 7/27/03

Mr. Wilker,

I must say I was taken aback when I learned from John Scheming on Friday, July 21 that you informed him during a phone call that you were unable to represent me with the AMGAR Tender strategy.  First, I was surprised to you informs someone else without informing me as you client of such a decision, which was inappropriate and unprofessional.  As of this date, you still have not informed me of your decision not to represent me with this strategy. Second, as a result of your negative comments  to John about the strategy, I lost his confidence in participating as the person offering the tender and have now reverted to another entity; consequently, John would not have charged me anything for providing the funding whereas the alternative party will be charging me between $236,000 and $320,000 for funding the offer, plus approximately $7,500 in administrative fees as well as another $3,000 paid to John's attorney for drafter the Letter of Commitment.

Furthermore, I was not please with your loss to MERS's Complaint or to the MER's Appeal.  I have no confidence in your competency in the legal issues involved in my case.  Were Al Kennedy he would be ashamed of your performance as my representative.

Consequently, I hereby discharge you as my legal representative. Please forward my entire file to the attorney at his address listed below.

With great disappointment and financial loss,

Gary M. Koeppel

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case Number:

PLTF / DEFT EXHIBIT
NO._____

Date
Admitted:_____

By:_____

Allie Warren, Deputy Clerk

**Koeppel-00098**

**Trial Exhibit No. 056-001**