UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY MERLE KOEPPEL, et al., | Case No. 24-cv-06457-NW |
| Plaintiffs, | |
| v. | **ORDER RE MAY 5, 2026 HEARING** |
| STEVEN WILKER, et al., | Re: ECF No. 171 |
| Defendants. | |

This Order documents and expands on rulings and findings that the Court made at the status conference held on May 5, 2026.

## I.    BACKGROUND

Before discussing the hearing, it is necessary to describe the current posture of the case. This is the Court's fourth Order addressing the sanctionable conduct of Plaintiffs and their counsel (Mr. Ronald Freshman). *See* ECF Nos. 142, 158, 161.

On July 25, 2024, Plaintiffs (Gary and Emma Koeppel, individuals and trustees of the Koeppel Family Trust) filed a three-count complaint in Monterey County Superior Court. They alleged legal malpractice, breach of fiduciary duty, and breach of contract against Defendants Steven Wilker (attorney), and Tonkon Torp LLP (law firm). The allegations in the complaint stem from Defendants' representation of Plaintiffs in litigation regarding the title and deed of trust for Plaintiffs' home in Carmel. Defendants took over the litigation from Mr. Freshman (the same Mr. Freshman who currently represents Plaintiffs in this action) beginning in mid-2022.

### A.    The Initial Pretrial Conference and Order to Show Cause

After the case was assigned to the undersigned Judge on February 24, 2025, *see* ECF No. 24, the Court set trial to begin on March 2, 2026. ECF No. 27. Very little occurred in the action

until the tail-end of discovery when the parties litigated a flurry of disputes before Judge Cousins. Relevant here, Judge Cousins adjudicated two distinct though intertwined disputes. ECF No. 48. First, Judge Cousins rejected Plaintiffs' attempts to limit the temporal scope of Defendants' discovery to 2022-2023. *Id.* As Judge Cousins explained, "in order to explore causation in this lengthy and complex dispute, Defendants will not be limited by time of the conduct." *Id.* Second, Judge Cousins granted Defendants' request to compel the deposition of third-party William J. Paatalo. *Id.* Mr. Paatalo is a private investigator and friend of Mr. Koeppel; he began working with Mr. Koeppel more than a decade ago and began working with Mr. Freshman sometime later.[1] Specifically, Judge Cousins found that the objections Mr. Paatalo and Plaintiffs separately advanced, including those related to the temporal scope of discovery, were "baseless" and "the maneuvering to prevent the deposition demonstrate[d] gamesmanship." *Id.*

Consistent with the Court's Standing Order, the parties were required to meet and confer and, on February 4, 2026, tender various joint pretrial materials including a pretrial statement, the jury instructions, verdict form, exhibit list, and motions in limine. ECF No. 27. Though the parties submitted filings by those names, the parties failed to engage in nearly any meet and confer and the filings did not satisfy the terms of the Order. *See* ECF No. 112. On February 18, 2026, the Court held a pretrial conference where it admonished the parties but did not impose any sanction; instead, the Court gave the parties until February 27, 2026, to complete the filings necessary to comply with the Standing Order, continued the pretrial conference to March 2, 2026

---

[1] Based on various filings in this and related cases, and information counsel has provided during hearings, the Court understands that Mr. Paatalo has a professional interest in assisting homeowners in challenging the validity of their mortgages based on a chain of custody dispute regarding the title. This strategy is also known as AMGAR. Mr. Paatalo and Plaintiffs worked together to apply this strategy to Plaintiffs' home in Carmel and developed a friendship. At some point later this strategy involved litigation, which is when Mr. Freshman was retained. It is unclear whether Mr. Koeppel or Mr. Paatalo found Mr. Freshman who filed a suit on behalf of Plaintiffs in Monterey Superior Court. Eventually, with Mr. Freshman's legal representation, Plaintiffs failed (in the Superior Court, this United States District Court, and in the Ninth Circuit Court of Appeal) in their attempts to employ this legal strategy to their Carmel home. Despite their repeated lack of success in state and federal court, Plaintiffs (with Mr. Freshman as counsel) again filed suit in the Monterey Superior Court, which is when Defendant, Mr. Wilker, stepped in to represent Plaintiffs because Mr. Freshman planned to retire. Shortly after, Mr. Freshman returned to take over the litigation from Mr. Wilker. Mr. Wilker's representation of Plaintiffs during that interim period is the subject of Plaintiffs' legal malpractice action against Defendants.

(later amended to March 3, 2026), and continued the start of trial to March 16, 2026. *See* ECF No. 88.

On February 17, 2026, though the parties had filed some of the necessary documents, multiple mandatory submissions were still not complete. ECF No. 112. What's more, the documents that the Court did have demonstrated that the parties were at an impasse because of a substantial dispute about fundamental legal questions in the case. *Id.* As these issues had never been before the Court, the Court ordered the parties to brief the issues and set another pretrial conference for the following week. *Id.* As the Court noted in the subsequent Order to Show Cause, "the repeated failure of the parties to comply with Court orders ha[s] prevented the Court not only from being able to timely proceed with this trial, but [has] also prevented the Court from being able to timely try another case or otherwise efficiently attend to the business of the Court." *Id*. The Court held ***three more*** pretrial conferences on March 16, March 19, and March 25, 2026, (which were necessary because substantive documents including jury instructions and a joint exhibit list were still incomplete). During those pretrial conferences, it became evident that the delays were substantially the cause of Mr. Freshman, who made written arguments that were inconsistent with positions he took during hearings, and who seemingly did not understand what he needed to prepare and file for trial or when those documents were due,  The Court again reset the trial to begin on April 20, 2021 (later revised to April 21, 2026). *See* ECF Nos. 120, 127, 128.

### B.    The Montana Action

On April 13, 2026, one week before the April 21, 2026 trial in this matter was set to begin, and one day before the penultimate pretrial conference, Defendants notified the Court of an ongoing discovery dispute with Mr. Paatalo in the United States District Court for the District of Montana. Defendants asked to address the issue with the Court at the April 14, 2026 conference. As the Court soon learned, Mr. Paatalo initiated the Montana Action in January 2026, in an attempt to modify the subpoenas he had received from Defendants in October and November of 2025. *See generally In re Paatalo*, No. 9:26-mc-00001 (D. Mont. filed Jan. 20, 2026) ("Montana Action"). Following multiple Court Orders requiring Mr. Paatalo to produce documents and a motion to compel filed by Defendants, the Montana Court ordered Mr. Paatalo to produce "all

responsive, withheld documents and/or correspondence" by no later than April 4, 2026.  Montana Action, ECF No. 19 at 3.

Shortly before the April 4, 2026 deadline, Mr. Koeppel attempted to intervene in the Montana Action.  As this Court recounted in a previous Order:

> On April 2, 2026, Plaintiff in the instant action, Mr. Gary Koeppel, appearing *pro se*, filed a motion to intervene and stay the Court's April 4, 2026 production deadline.  Montana Action, ECF No. 21.  According to Mr. Koeppel, a large number of the documents in Mr. Paatalo's possession were covered by privilege belonging to Mr. Koeppel.  *Id.*  This Court notes that the motion itself is suspiciously sophisticated: though Mr. Koeppel is not a lawyer, his motion reads as though it was written by a lawyer with case citations and complicated legal terms.[2]

> As the Montana Court explained in the Order it issued the following day, Mr. Koeppel had "placed the Court in the impossible position of having to address his request both on the eve of the April 4 disclosure deadline, and two weeks before the jury trial that is to proceed in the Northern District of California."  Montana Action, ECF No. 21.  The Court elected to stay the April 4, 2026 deadline through April 7, 2026, while Mr. Koeppel reviewed Mr. Paatalo's documents and generated "a detailed privilege log addressing every single document, written communication, or declarations subject to the Paatalo Document Subpoena that he believes should be withheld on privileged or work product grounds."  *Id*.  The Court would rule on the motion to intervene following its review of Mr. Koeppel's log.

> . . . .

> On April 14, 2026, the Montana Court denied Mr. Koeppel's motion to intervene as untimely.  *Id.* (explaining that Mr. Koeppel did not "seek to quash [the subpoena] on privilege grounds consistent with the 14-day time limit imposed by Rule 45" but instead filed a "request to intervene two days before Paatalo's disclosure deadline, approximately five months after the subpoena was issued and two weeks before trial.").  The Court further ordered that Mr. Paatalo "must produce to Defendants all the documents originally identified as responsive in his February 23, 2026 'NonParty Response and Objection[],' (Doc. 17-2), on or before 5:00 p.m. on April 16, 2026 (no less than 6,143 emails)" irrespective of whether the documents appeared on Mr. Koeppel's privilege log.  *Id*.

---

[2] To further complicate the relationships between the Koeppels, Mr. Paatalo, and Mr. Freshman, the Court learned that Ms. Kimberly Cromwell, Mr. Freshman's paralegal, has a relationship with Mr. Paatalo, as described more fully in footnote 5.  Ms. Cromwell has been significantly involved in this matter, including preparation of pretrial filings, and in at least one instance appearing at a pretrial conference and speaking to the Court directly to provide litigation details about which Mr. Freshman seemed uncertain.

United States District Court
Northern District of California

ECF No. 142. In that same Order, this Court discussed the effect of the Montana Action on this case:

> Though the Court had known that Defendants had struggled to obtain discovery from Mr. Paatalo, the Court only became aware of the continuing nature of those difficulties when it reviewed Defendants' filing. In the notice, Defendants sought leave to discuss these developments with the Court. *Id.*
>
> The Court obliged Defendants and addressed the issue at the next day's conference. Upon reviewing the record in the Montana Action, the Court took note of a few things. First, despite Defendants' diligence in pursuing discovery from Mr. Paatalo following service of their subpoenas, there remained upwards of 5,000 unproduced documents that could be potentially relevant to this action to which Defendants did not presently have access. Second, Mr. Koeppel was deeply invested in keeping Mr. Paatalo's documents out of the hands of Defendants, so much so that he (1) objected to the subpoenas shortly after they were served and (2) filed a motion to intervene in the Montana Action. Third, counsel for Plaintiffs in this action, Mr. Ronald Freshman, did not appear on Mr. Koeppel's behalf in the Montana Action; Mr. Koeppel instead filed his motion *pro se*. This despite the fact that: (1) the Montana Action is entirely derivative of, and would not exist but for, the instant action; (2) Mr. Freshman had previously drafted and served objections to the Paatalo subpoenas on privilege grounds on behalf of the Koeppels; (3) Mr. Koeppel's motion was filed to protect the attorney-client communications he had *with Mr. Freshman* that were in Mr. Paatalo's possession; and (4) if Mr. Koeppel were directed to conduct a privilege review—and indeed, his motion [in the Montana Action] contemplated and affirmatively requested that relief—Mr. Koeppel would almost certainly need Mr. Freshman's assistance in identifying those communications.

*Id.*

At the pretrial conference held on April 14, 2026, the Court asked Mr. Freshman about his personal involvement in the Montana Action. Mr. Freshman made several representations, many unbelievable and all of them unsatisfactory. As the Court found:

> it c[ould not] credit Mr. Freshman's representation that his help with the motion to intervene was limited to "mak[ing] sure that spelling was correct and things of that nature." Rough Tr. And the Court did not receive an answer, credible or otherwise, when it asked Mr. Freshman how he could or why he would be acting as anything other than Mr. Koeppel's legal counsel when he reviewed the motion. The Court further finds that Mr. Freshman either (1) directed Mr. Koeppel to designate certain emails as attorney work-product or attorney-client communication on specious reasoning or (2) he reviewed Mr. Koeppel's own designations and, despite having no supporting legal authority or factual basis to make those designation, Mr. Freshman

United States District Court
Northern District of California

5

made no attempts to correct them. These findings are extremely troubling, and the Court does not take them lightly.

ECF No. 142.

At the end of the April 14, 2026 hearing, the Court asked Defendants to explain what, if anything, they were asking the Court to do. *Id.* Counsel for Defendants indicated that, given the severity and timing of Plaintiffs behavior, the Court should consider terminating sanctions. *Id.* Ultimately, the Court concluded that it should defer taking any action until Defendants received and had a chance to review Mr. Paatalo's production on April 16, 2026. *Id.* Upon that review, the Court ordered Defendants to inform the Court by the end of the day on April 17, 2026, how they would like to proceed. *Id.*

But Mr. Paatalo did not comply with the Montana Court's April 16, 2026 production deadline. Montana Action, ECF No. 30. Instead of producing the "6,143 emails" that he originally identified as responsive to Defendants and the Montana Court, on April 16, 2026, Mr. Paatalo produced only 155. *Id.* The remaining emails, he explained, were not actually responsive. *Id*. But as the Montana Court reminded him in an Order dated April 20, 2026, Mr. Paatalo "is not in a position to define what is relevant or what Defendants are entitled to review. Nor can he claw back his initial identification of '6,143 emails' based on his evolving definition of 'responsive.'" Montana Action, ECF No. 33. The Montana Court explained that Mr. Paatalo would be given "one more opportunity to disclose the identified documents before he [faces] daily contempt sanctions*." Id.*

Most recently in the Montana Action, the Montana Court held a hearing on April 22, 2026, to address whether Mr. Paatalo should be held in contempt regarding his earlier defiance of orders. Montana Action, ECF No. 32. On April 22, 2026, presumably to avoid the daily sanction, Mr. Paatalo provided Defendants more than 10,000 communications, exceeding the 6,315 emails he previously identified.[3] *See* Montana Action, ECF No. 35. On May 4, 2026, the Montana Court formally found Mr. Paatalo in contempt and ordered him to pay Defendants $14,701 in fees and

---

[3] The Court understands that Defendants dispute the sufficiency of Mr. Paatalo's production, and that Defendants intend to seek relief in the Montana Action.

costs on or before July 1, 2026.  Montana Action, ECF No. 38.

### C.     Plaintiffs' Failure to Meet Discovery Obligations

On April 17, the day after Mr. Paatalo refused to make his full court-ordered production of 6,153 emails, Plaintiffs filed a "Notice of Compliance Regarding Nonparty Subpoena to William Paatalo."  ECF No. 143.  Plaintiffs parroted Mr. Paatalo's refrain that he need not produce the previously identified "6,153 emails" on responsiveness grounds.  This, despite three separate Orders in the Montana Action requiring the production of those documents, one of which expressly ordered Mr. Paatalo to produce "no less than 6,143 emails).  *See* Montana Action, ECF Nos.  14, 19, 29.  Nevertheless, in direct contravention of the Montana Court's Order, Plaintiffs made the blatantly false assertion that "[n]onparty Paatalo has not refused to comply with the subpoena; rather, he has complied in accordance with the governing federal discovery rules."  *Id.* at 2.

Also on April 17, 2026, and consistent with the Court's Order of April 14, 2026, Defendants filed a motion for terminating sanctions.[4]  The motion explained that Defendants had reviewed the 155 documents that Mr. Paatalo *had* produced and identified two highly relevant and potentially exonerating emails sent between Mr. Paatalo and Mr. Koeppel in July 2023.  Crucially, Defendants explained, these emails should have been produced by Mr. Koeppel in this action because the communications: did not include an attorney (foreclosing a credible assertion of privilege), were within the relevant time-period, discussed issues related to the litigation, and mentioned Defendant Wilker by name.  According to Defendants, Plaintiffs' failure to produce these emails during regular discovery demonstrated that Plaintiffs were impermissibly withholding relevant documents.

The Court held another hearing on April 21, 2026.  During that hearing,[5] the Court asked

---

[4] The Court set an expedited briefing schedule for the motion.  *See* ECF Nos. 146, 147.  Plaintiffs filed an opposition on April 20, 2026, and Defendants filed a reply the following morning.

[5] Also discussed at the hearing was a book coauthored by William Paatalo and Mr. Freshman's paralegal Kimberly Cromwell in 2015.  *See generally Cromwell v. Certified Forensic Loan Auditors*, Case No. 17-cv-02429-SBA (N.D. Cal. 2015).  In 2017 Mr. Paatalo and Ms. Cromwell brought an infringement suit in this District related to their book.  In reading an Order from that

Mr. Freshman why Plaintiffs had not produced the documents discussed in Defendants' motion for terminating sanctions.  Mr. Freshman and the Court had the following exchange:

> **MR. FRESHMAN:** THE 14TH AND THE 15TH DID NOT INDICATE -- THE E-MAIL ON JULY 14TH, THE E-MAIL ON JULY 15TH, DID NOT INDICATE ACTIONABLE CONDUCT BY MR. WILKER, AND WE DIDN'T BELIEVE THEY WERE RESPONSIVE SO WE WERE OPERATING UNDER JUDGE COUSINS WHO DID NOT ORDER MORE PRODUCTION, HE SAID THE SCOPE –
>
> **THE COURT:** MR. FRESHMAN, I FIND WHAT YOU ARE SAYING NOW TO BE ENTIRELY INCREDIBLE, MEANING ENTIRELY LACKING IN CREDIBILITY. THE IDEA THAT YOU BELIEVED THAT THOSE E-MAILS WERE NONRESPONSIVE, THE PLAIN LANGUAGE OF THOSE -- EVEN GIVING YOU THE BENEFIT OF THE DOUBT, I CANNOT GIVE YOUR CLIENT THE SAME BENEFIT BECAUSE YOUR CLIENT IS LISTED AS SOMEBODY WHO WAS EITHER THE AUTHOR OF OR THE RECIPIENT OF THOSE E-MAILS. BUT ONCE YOU SAW THEM, YOU HAD AN INDEPENDENT OBLIGATION AS AN OFFICER OF THE COURT TO TURN THEM OVER. THERE WAS A COURT ORDER REQUIRING YOU TO DO IT.

ECF No. 153.

The Court, deeply troubled by these revelations, asked Mr. Freshman how the Court could proceed given the ongoing issues.

> **THE COURT:** MR. FRESHMAN, I THINK WHAT WOULD BE THE MOST HELPFUL IS IF YOU WOULD EXPLAIN TO ME UNDER THE CIRCUMSTANCES, GIVEN THE FACT THAT THE PRIMARY WITNESS IN YOUR CASE, SOMEONE WHO YOU'VE KNOWN AND WORKED WITH AND YOU'VE REFERRED TO AT TIMES AS AN AGENT, A CO-AUTHOR OF A BOOK WITH YOUR PARALEGAL, HIS COMPLETE FAILURE TO COMPLY WITH THE FEDERAL COURT ORDER THAT RELATES DIRECTLY TO INFORMATION IN THIS CASE THAT HAS NOT BEEN PRODUCED, AND AT THIS POINT IF IT'S PRODUCED AT ALL, CERTAINLY WILL NOT BE PRODUCED IN ADEQUATE TIME FOR THE DEFENDANTS TO BE ABLE TO DO ANYTHING WITH IT IN ADVANCE OF THIS

---

action, the Court learned that "Ms. Cromwell was ostensibly proceeding *pro se* in that matter and yet [Mr. Freshman was] writing and signing documents on her behalf."  ECF 153 at 24:3-6.  When the Court asked Mr. Freshman if he viewed his role in that action as a conflict in the instant action, he said "no."  *Id.*  at 23:21-23.  When the Court asked him about the concerns Judge Armstrong raised in her order regarding Mr. Freshman's ghostwriting role, Mr. Freshman stated that he did not recall those concerns.  *See* ECF No. 150-1 at 40-47(finding assertions made by Ms. Cromwell and Mr. Freshman "disingenuous and highly troubling" and detailing Mr. Freshman's violations of Rule 11).

TRIAL STARTING TOMORROW. SO WHAT DO YOU SUGGEST THAT THIS COURT DO?

**MR. FRESHMAN**: MS. MACGREGOR POINTED OUT THAT SHE DIDN'T HAVE TIME FOR A MOTION FOR SUMMARY JUDGEMENT BASED UPON THE WITHHOLDING OF THIS INFORMATION, MY SUGGESTION IS . . . THAT THE TRIAL BE PUT ON HOLD AND A MOTION FOR SUMMARY JUDGEMENT FROM BOTH SIDES PROCEED. AND THAT WOULD BE A POSSIBLE RESOLUTION, IT WOULDN'T INVOLVE JURY TIME.

*Id.*

Following the April 21, 2026 hearing, the Court issued an Order on April 23, 2026 that, among other things, required Plaintiffs to produce "any and all documents, communications, or emails in their possession, custody, or control, responsive to any of Defendants' requests for production" by no later than May 1, 2026. ECF No. 158. The Order also required Defendants to file "an accounting of their fees and costs for all [of] the Montana litigation, and, from February 18, 2026 through April 21, 2026, for litigation in this action." *Id.*

On April 28, 2026, Defendants filed such an accounting. ECF No. 159. That same day, Plaintiffs filed a motion for reconsideration requesting relief from the portions of the Court's April 23, 2026 Order that "compel[led] production of attorney-client privileged and work-product materials." ECF No. 160. On April 29, 2026, the Court provisionally stayed that portion of the Order, relieving Plaintiffs of their obligation to produce ***privileged*** documents by May 1, 2026. *Id.* In lieu of production, the Court ordered Plaintiffs to provide a privilege log of all withheld documents by May 4, 2026. The remaining portions of the Order remained in force. The Court formally denied the motion for reconsideration, though maintained the stay, at the hearing held on May 5, 2026.

As required by the Court's April 23, 2026 Order, the parties filed a joint status report on May 4, 2026. ECF No. 169. In the report, Plaintiffs explained that, as of that date, they had only "completed and produced privilege-reviewed materials for the 2015–2018 period," and within that period Mr. Freshman "liberally construed" what documents were privileged. *Id.* This was in direct contravention of the Court's April 29, 2026 Order (that modified the Court's April 23, 2026 Order), which required Plaintiffs to produce ***all*** non-privileged documents by May 4, 2026.

United States District Court
Northern District of California

9

Instead of complying with Court directives, Plaintiffs unilaterally determined that it was "not feasible to complete production of all materials by the 5:00 p.m. deadline." *Id*. Mr. Freshman decided, again unilaterally, that Plaintiffs would provide rolling productions. *Id.* At no point did Plaintiffs file a motion to seek leave from the Court's Order that would allow Plaintiffs to provide rolling productions, or to extend the deadline to produce all documents beyond May 4.

## II.    THE MAY 5, 2026 HEARING

The Court now turns to the May 5, 2026 hearing. At the hearing, the Court made numerous rulings and findings.

At the outset, the Court found that Plaintiffs—by and through their counsel of record, Mr. Freshman—have not accepted responsibility or demonstrated any remorse for their recent conduct, including: repeatedly violating Court Orders; failing to comply with Court deadlines, which caused the trial to be reset multiple times, and ultimately caused the Court to have to release all 42 of the jurors (who were called for jury duty, filled out the jury questionnaires that were reviewed by counsel and the Court, including at a hearing); and for thwarting discovery that ultimately resulted in a finding of contempt against Mr. Paatalo. Rough Tr.[6]

Additionally, the Court formally found that Mr. Freshman, Mr. Koeppel, and Mr. Paatalo worked in concert to evade Court Orders and discovery obligations in both this District and Montana. The Court based this finding on a few things. First, the Court found that, though Mr. Freshman had not signed any of the filings attributed to Mr. Paatalo or Mr. Koeppel, the documents bore striking similarities to the arguments and writing style Mr. Freshman has submitted in this action. Next, as the Court explained on the record, Mr. Freshman's demeanor when explaining his behavior to the Court at various hearings could be "conservatively described as evasive and inconsistent." *Id.* At different times, Mr. Freshman has indicated that Mr. Paatalo acted as his agent and thus was working at Mr. Freshman's direction. At other points, Mr. Freshman has distanced himself from Mr. Paatalo as well as his own client, insisting to the Court that both were acting without his input. As a result of Mr. Freshman's continued equivocation, the

---

[6] Quotes from the May 5, 2026 hearing come from the rough version of the transcript made available to the Court and may differ somewhat from the final version of the transcript,

*United States District Court*
*Northern District of California*

Court was simply unable to credit Mr. Freshman's representations. *Id.*

One might expect that the recent Orders from this Court and the Montana Court would have impressed upon Mr. Freshman and his client the importance of compliance with Court Orders in the future. Unfortunately, that is not the case. At the hearing, Mr. Freshman admitted that his decision to provide rolling productions to Defendants did not comply with the Court's Order requiring production of **all** nonprivileged documents by no later than May 4, 2026. *Id.* Ironically, that Order was the Court's attempt to bring Plaintiffs **into** compliance with their obligations under Rule 26 by requiring them to produce documents that Plaintiffs had impermissibly withheld for months. *Id.*

What's more, Plaintiffs have yet to produce documents from the timeframe most critical to the instant action, 2022-2023 (*i.e.*, the period Mr. Wilker served as counsel to the Koeppels.). At the hearing, Mr. Freshman explained that he needed extra time to comply and vowed that he would produce all responsive, nonprivileged documents by no later than May 14, 2026.[7] *Id.* The Court advises Plaintiffs that any failure to meet the May 14, 2026 deadline will generate further sanctions.

The Court explained that the full extent of the damage attributable to Plaintiffs' sanctionable conduct cannot yet be quantified. This is largely because there are still significant portions of Plaintiffs' production that remain outstanding. As noted above, it is possible, if not likely, that Plaintiffs' production will require Defendants to retake certain depositions. It may generate a motion for summary judgment. And Defendants have already indicated that they intend to revise the current jury instructions in light of new documents that Plaintiffs just produced. Without knowing the content of Plaintiffs' incomplete production, the Court cannot calculate the

---

[7] To avoid any doubt, the Court reiterates that Plaintiffs must also file a complete privilege log by that same date. The log must contain sufficient information to "enable [Defendants] to assess . . . claim[s]" of privilege. Fed. R. Civ. P. 26(b)(5)(A)(ii). At a minimum, the log must identify the following information for each and every document withheld: (1) the attorney and client involved, (2) the nature of the document, (3) all persons or entities shown on the document to have written, received, or sent the document, and (4) the date the document was generated, prepared, or dated. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).

United States District Court
Northern District of California

full scope of Defendants' fees that will be attributable to Plaintiffs' and Mr. Freshman's misconduct.

That said, the Court can calculate a subset of the total fees that are attributable to Plaintiffs' misconduct, at least through the date of May 11, 2026, when Defendants are set to file a supplement to their accounting. Certain fees and costs the Court will award to Defendants have already been quantified in Defendants' initial accounting document. Those fees include: $31,595.35 for attorney work and costs related to the Montana action[8]; $9,497.00 in fees associated with the motion for terminating sanctions; and $9,435.00 in fees and costs spent on juror research that is now useless. *See* ECF No. 159. Other fees and costs can and will be computed once the Court receives supplementary information from Defendants.[9] These include: some portion of the fees and costs associated with the latter five of **seven** pretrial conferences the Court held in this action before it was forced to cancel the trial entirely, *see* ECF Nos. 120, 127, 128, 137, 151; the fees and costs associated with Defendants' recent briefing on Plaintiffs' motion for reconsideration; and additional attorney fees and costs for preparing, traveling, and attending the May 5, 2026 hearing. The amount to be paid will be no less than $50,527.35 (the total of the three figures noted above) and will likely be higher given the fees and costs that still need to be calculated consistent with this Order.

Because of the severity of the misconduct, and because the Court has found that Mr. Freshman is working in concert with Plaintiffs and Mr. Paatalo in defying Court Orders and evading discovery, Plaintiffs and Mr. Freshman are jointly and severally liable for the attorneys'

---

[8] The number provided above, $31,595.35, reflects the total amount Defendants expended in the Montana Action ($46,297.50) less the amount in fees and costs that the Montana Court Ordered Mr. Paatalo to pay Defendants on May 4, 2026 ($14,701.65). ECF No. 168 at 2 n.1; *see also* ECF No. 159; Montana Action, ECF No. 38 at 14. In its Order, the Montana Court explained that it limited its award to those fees and costs associated with Defendants' motion to compel Mr. Paatalo's compliance with Defendants' subpoenas. The Montana Court declined to consider, and therefore did not award, fees and costs associated with Mr. Paatalo's deposition, Defendants' basic supervisory work, and Mr. Koeppel's putative intervention and privilege log. Montana Action, ECF No. 38 at 14.

[9] The specific information the Court requested, and the format, were discussed on the record. The Court Ordered Defendants to file the supplemental information by no later than close of business on May 11, 2026.

12

fees and costs that will be included in the Order that this Court will issue following Defendants' May 11, 2026 supplemental accounting submission.

Further, and for all the reasons articulated at the May 5, 2026 hearing, the Court finds that Mr. Freshman has repeatedly lacked candor when communicating with the Court, lacked a colorable legal bases for many of his arguments and allegations, and has demonstrated that he has little if any regard for Court Orders, deadlines, or the rules of professional responsibility.  For this misconduct, the Court sanctions Mr. Freshman, alone, $5,000, payable to the Court by no later than close of business on May 13, 2026.  Consistent with the rules of professional responsibility, *see* Cal. Bus. & Prof. Code, § 6068(o)(3), and with this Court's express direction, Mr. Freshman shall promptly, meaning by no later than May 15, 2026, report this sanction to the bar of California.

When the Court reached the end of the hearing and asked the parties if they had anything further to discuss, Mr. Freshman did not use that opportunity to take responsibility or express contrition for his behavior.  Instead, Mr. Freshman began arguing with the Court.  He interrupted the Court, aggressively and repeatedly raised his voice, and refused to stop talking when the Court asked.  The Court provides the resulting colloquy in full below:

> **THE COURT:** IS THERE ANYTHING ELSE FOR TODAY? ANYTHING FOR THE PLAINTIFF?
>
> **MR. FRESHMAN:** THE ONLY THING THAT I'M CONFUSED ABOUT, YOUR HONOR, IS THAT I LOOKED UP YOUR RULES, STANDING ORDER 7-2[10], AND WHEN I LOOKED IT UP --
>
> **THE COURT:** WHAT IS THE CONCERN YOU HAVE, MR. FRESHMAN?
>
> **MR. FRESHMAN:** YOU HAVE A STANDING ORDER.
>
> **THE COURT:** YES, I DO. I HAVE MULTIPLE STANDING ORDERS.

---

[10] The Court's Civil Standing Order uses letter headings and not number headings.  The Court believes Mr. Freshman was attempting to reference Civil Standing Order § C, which includes a direct citation to Civil Local Rule 7-2(a).

United States District Court
Northern District of California

United States District Court
Northern District of California

**MR. FRESHMAN:** CORRECT, AND IT SAYS ALL CIVIL MOTIONS MUST BE NOTICED.[11]  IS THAT SOMETHING THAT YOU ADHERE TO, OR DOES IT ONLY APPLY TO THE PLAINTIFFS AND NOT THE DEFENDANTS?

**THE COURT:** DO YOU HAVE ANY OTHER QUESTIONS FOR THE COURT TO DEAL WITH TODAY?

**MR. FRESHMAN:** I HAVEN'T FINISHED.

**THE COURT:** MR. FRESHMAN --

**MR. FRESHMAN:** WOULD YOU LIKE ME TO CONTINUE?

**THE COURT:** MR. FRESHMAN, IF YOU ARE -- NO -- IF YOU HAVE SOMETHING THAT YOU ARE CONCERNED ABOUT WITH [THE] COURT, FILE A MOTION; YOU'VE DEMONSTRATED THAT YOU ARE CLEARLY ABLE TO DO THAT.

**MR. FRESHMAN:** I'M ASKING THE COURT IF IT STANDS BY ITS STANDING ORDER?

**THE COURT:** MR. FRESHMAN --

**MR. FRESHMAN:** IS THAT A YES OR A NO?

**THE COURT:** MR. FRESHMAN, I WOULD SUGGEST AT THIS POINT YOU STOP THIS LINE OF QUESTIONING WITH THE COURT, AND IF YOU HAVE A MOTION, OR AN ISSUE, YOU TAKE IT UP BY FILING SOMETHING APPROPRIATELY.

**MR. FRESHMAN:** IT'S NOT A MOTION. I'M JUST ASKING A QUESTION, AND THE COURT IS UNABLE TO ANSWER IT, APPARENTLY.  THAT'S FINE. I GET IT. I CAN ACCEPT THAT, BUT I DISAGREE WITH YOUR STANDING ORDER VERSUS -- SHE PRESENTED --

**THE COURT:** MR. FRESHMAN --

**MR. FRESHMAN:** SHE PRESENTED --

**THE COURT:** MR. FRESHMAN --

**MR. FRESHMAN:** YEAH?

**THE COURT:** I'M GOING TO SUGGEST RIGHT NOW THAT YOU STOP.

**MR. FRESHMAN:** WOULD YOU LIKE ME TO LEAVE?

---

[11] The Court's Civil Standing Order requires that all civil motions "be noticed for hearing in accordance with Civil Local Rule 7-2(a)."  Local Rule 7-2(a), in turn, requires motions to be set for hearing "not less than 35 days after filing of the motion" "[e]xcept as otherwise ordered or permitted by the assigned Judge . . . "  L.R. 7-2(a).

14

**THE COURT:** WOULD YOU LIKE TO LEAVE? IS THAT YOUR QUESTION?

**MR. FRESHMAN:** I DON'T KNOW. WHAT DO YOU WANT ME TO DO?

**THE COURT:** I'D LIKE YOU TO STOP BEHAVING IN A WAY THAT IS CONTEMPTUOUS.

**MR. FRESHMAN:** IT'S NOT CONTEMPT.  I'M ASKING A QUESTION. THAT'S ALL.

**THE COURT:** IS THERE ANY[THING] FURTHER?

**MS. MACGREGOR:** YOUR HONOR, THE FIRST TWO CONFERENCES WE SHOULD NOT INCLUDE IN OUR ACCOUNTING?

**THE COURT:** CORRECT.

**MS. MACGREGOR:** ALL RIGHT. THANK YOU.

**THE COURT:** ALL RIGHT.

THIS MATTER IS CONCLUDED.

Rough Tr.

Mr. Freshman demonstrated his continued contempt for the Court and its Orders as a frustrated attorney might treat a hostile witness during cross examination.  While Mr. Freshman's behavior at the end of the hearing was independently sanctionable,  the Court does not impose additional sanctions for that colloquy.  Instead, the Court finds that Mr. Freshman was challenged to contain his anger in light of the sanctions the Court had already imposed.  The Court concludes that those sanctions, assuming they are timely paid, sufficiently address Mr. Freshman's final outburst.

## III.    CONCLUSION

In conclusion, this Order requires:

1.    Defendants to provide supplemental information regarding fees by no later than May 11, 2026;

2.    Plaintiffs to produce all responsive nonprivileged documents, and to provide a detailed privilege log of withheld documents, by no later than May 14, 2026; and

3.    By no later than May 13, 2026, Mr. Freshman shall pay a sanction of $5,000 to the

Court, which he must disclose to the California state bar by no later than May 15, 2026.

As stated on the record, the Court CONTINUES the May 5, 2026 hearing to May 26, 2026, at 9:00 a.m. via Zoom. By that date, the Court expects it will have calculated the specific amount in fees that Mr. Koeppel and/or Mr. Freshman will be ordered to tender to Defendants, and it will assign a deadline accordingly. The Court will likewise inquire as to the status of Plaintiffs' production.

**IT IS SO ORDERED.**

Dated: May 10, 2026

Noël Wise
United States District Judge

United States District Court
Northern District of California

16